# White, Auditor *v.* State *ex rel.* Denson.

## *Application for Mandamus.*

1. *Constitutional law; statute authorizing reduction of circuit judge's salary unconstitutional.*—The statute which requires the State Auditor, under such rules as he may prescribe, to deduct from the sa¹ary of a circuit judge one half of his usual salary for such time as a special judge is required, by reason of the absence of the regular circuit judge, to hold the court for him (Code, § 930), is violative of the constitutional provision forbidding the diminution of the salary of circuit judges during their term of office (Const. Art. VI § 10), and is, therefore, unconstitutional and void.

2. *Same; deduction in salary of circuit judges; neglect of duty.* The only ground provided by the Constitution for the deduction of the salary of circuit judges is that provision which gives the legislature power to provide for the deduction in salary of public officers for neglect of duty in their official capacity, (Const., Art. IV, § 48), and to constitute a neglect of official duty by a judge, there must be not only a failure by carelessness or design on the part of such judge to perform the duty required of him by the law, but the party failing must have the capacity to perform the acts required of him; and where his capacity is affected by the serious illness of a member of his family or by other circumstances and conditions, providential in their character and over which he has no control, he can not be said to be guilty of neglect of duty, within the meaning of the constitutional provisions.

APPEAL from the City Court of Montgomery.

Heard before the Hon. A. D. SAYRE.

The petition in this case was filed by the State on the relation of Nimrod D. Denson, addressed to the Judge of the City Court of Montgomery, asking that a peremptory writ of *mandamus* be issued, commanding the appellant, Walter S. White, as Auditor of the State of Alabama, to draw his warrant on the State Treasurer in favor of Nimrod D. Denson for the sum of $17.35, in payment of a balance due on petitioner's salary for the month ending May 31st, 1899, as Judge of the Fifth

37

[White, Auditor v. State *ex rel.* Denson.]

Judicial Circuit. The facts averred in the petition are sufficiently stated in the opinion.

To this petition, the respondent demurred upon the grounds that it was shown by the petition that under the statute it was the Auditor's duty to make the deduction from the petitioner's salary, and that said statute was not in contravention of the Constitution. It was agreed by the parties that the facts as set out in the petition were true.

On the submission of the cause, the demurrer interposed to the petition was overruled, and the trial court rendered a judgment awarding a peremptory writ of ' *mandamus* as prayed for. From this judgment the respondent appeals, and assigns as error the overruling of his demurrer to the petition and the rendition of the judgment awarding the writ of *mandamus*.

CHAS. G. BROWN, Attorney-General, for the State.

THOS. G. & CHAS. P. JONES, *contra.*—The plain design of section 10 of Article VI of the Constitution is to secure the independence of Judges, by denying all legislative control over their compensation during their term of office. If that section stood alone there could be no hesitation in declaring that the sole penalty contemplated by the Constitution for "neglect of duty" is impeachment, and that the legislature is powerless to impose another penalty in the form of a diminution of salary. In section 48 of Article IV, however, is a command that the General Assembly shall "regulate by law the cases in which deduction shall be made from the salaries of public officers for neglect of duty in their official capacities, and the amount thereof." No reason is perceived why judges are not "public officers" within the meaning of this section; for neglect of duty by a judge falls both within the letter and the spirit of the evil intended to be remedied. The two sections must, therefore, be construed together and harmonized so as to give a fair field of operation to each. So construed, the legislative power to diminish the compensation of a Judge by de-

duction from his asalary for whatever is "neglect of duty" is undoubted, when effected under proper statutes ascertaining the cases and giving the Judge opportunity for a hearing in the courts before the penalty is exacted.

The power to deduct from judicial salaries is not unlimited. It cannot be exercised in any case except for "neglect of duty," and the legislature is not the final judge, as to what shall constitute such neglect. The legislature. cannot under guise of ascertaining the cases in which deduction shall be made, improperly meddle with the judicial freedom as to the mode and manner of exercising the judicial power; nor can it enact and enforce any legislation which practically destroys the independence of the judiciary, or makes it a mere dependent of the legislative power.

The words "neglect of duty," as used in section 48 of Article IV, of the Constitution, whether accepted in their legal or ordinary significance, refer only to omissions of duty as to which the judge is at fault or without legal excuse. Generally, where the compensation of the Judge ·is not a per diem, or based upon fees earned in particular cases, but fixed at a given sum, payable at particular periods, absence from the bench on account of sickness, or other providential visitation, has never been treated as neglect of duty, or deemed to authorize a deduction of compensation as a penalty for such . neglect.—Throop on Public Officers, § 500. The statutes of this State, under all its Constitutions, affirmatively declared that no deduction of salary should 'be enforced for failure to hold courts, when occasioned by the sickness of the Judge or providential visitation in his family. Such failure was not deemed neglect of duty. When the present Constitution was adopted, such was the law; and it continued unchanged in any respect until the passage of the act of February 18, 1895, now embodied in section 928-930 of the Code of 1896. We cannot doubt that the framers of the Constitution of 1875 used the words "neglect of duty," in this connection, in the sense and meaning which had long been accorded to them under prior constitutions and in the statutes of this State; and having been thus used, the legislature is powerless to enlarge their

scope and meaning. A judge who fails, when he can, to attend a dying member of his family, or pay the last tribute of respect to his dead, is largely lowered in the respect of mankind. It was not within the purview of the Constitution that he should discharge his duties at such a time, or that his failure to do so should be deemed a neglect of duty. It is, therefore, not within legislative competency to make absence from the bench in cases of serious sickness of the judge himself, or providential visitation upon a member of his family, neglect of duty. The correctness of this conclusion is fortified by decisions of the highest authority, under statutes and constitutional provisions almost identical with those here involved.—*Auditor v. Adams,* 13 B. Monroe, 45; *Burch, Comptroller, v. Baxter,* 12 Heiskell, (Tenn.), 601; *Ex parte Tully,* 38 Amer. Dec. 33.

TYSON, J.—The petition upon which the court awarded the writ of *mandamus* alleged the following state of facts: The petitioner Denson was regularly elected circuit judge at the general election in August, 1898, and qualified as such. That on the 24th of April, 1899, he, as judge, opened and organized the circuit court of Elmore County, and was engaged in discharging the duties of his office, when on that day he received information of the serious illness of his mother which resulted in her death and burial on the 27th day of April, 1899. That he left his court after having arranged with the Governor for the appointment of a special judge to continue the holding of the court for the week. The Auditor declined to issue to him a warrant for the full amount of his salary for the month of April, but deducted therefrom the sum of $17.35 for the five days he was absent from the court, it being $3.47 per diem for each day's absence and one-half of the salary or compensation per day allowed the petitioner by law. The justification for this deduction by the Auditor was claimed by him under the provision of sections 929 and 930 of the Code. The fact also appears from the petition that Denson filed with the Auditor on the 6th day of May his affidavit stating the fact of his absence, ill-

ness, death and burial of his mother, as required by section 924.

The facts alleged in the petition which we have summarized above, were admitted to be true by the respondent White, Auditor; and the trial court upon final hearing overruled the demurrers to the petition, and rendered a judgment awarding a peremptory writ of *mandamus* against the Auditor, commanding him to draw a warrant on the State Treasurer in favor of Denson for the sum of $17.35.

The correctness of this judgment involves the constitutionality of section 930 of the Code. If that section is not violative of some clause of the constitution of the ·State, then confessedly the action of the Auditor in deducting the amount from the salary was right, and it was his duty to have done so. On the other hand, if the contention of the petitioner, that the authority conferred by this section upon the Auditor by the General Assembly was an exercise of their legislative prerogative in violation of the prohibition of any clause of the constitution, be true, that the petitioner was entitled to have the Auditor to draw a warrant for the amount upon the treasurer in his favor.

There are two sections in the constitution bearing upon the question, and their construction is involved in its determination. The first of these, we will consider, is found in Art. VI, section 10, and reads as follows: "The judges of the Supreme Court, circuit courts and chancellors shall, at stated times, receive for their services a compensation which shall not be diminished during their official terms; but they shall receive no fees or perquisites, nor hold any office (except judicial offices) of profit or trust under this State or the United States, or any other power, during the term for which they have been elected."

The powers of the government of this State are divided into three distinct departments, each of which is confided to a separate body of magistracy; those which are legislative, to the General Assembly, those which are executive, to the Governor. Secretary of State, State Treasurer, State Auditor, Attorney General, Superintendent of Education and a sheriff for each county; and

those which are judicial to the Senate sitting as a court of impeachment, a supreme court, circuit courts, chancery courts, courts of probate, such inferior courts of law and equity as the General Assembly may from time to time establish, and such persons as may be by law invested with powers of judicial nature.

The duties imposed by law upon each of these separate bodies of magistracy are distinctly different and independent of those imposed upon the other. Each department, though co-ordinate in that the discharge of the functions of each with reference to the exercise of the governmental powers conferred, is necessary to the well-being of the State, is independent of the other. Neither has the right to assume the prerogatives of the other, and to do so would be a bold usurpation of power unwarranted by the constitution, and would doubtless be and should be resented by the people by whom the powers were conferred. The incumbents of each of the offices making up the three bodies of magistracy are amenable to and can be made to answer only to the people for the manner in which they discharge the duties of their respective offices so long as they do not offend those wise provisions of the constitution and the statutes for which they may be impeached. It cannot be gainsaid successfully that such a system, by which the heads of the various great departments of government are made independent the one of the other, is not only wise; but the necessity for its recognition and maintenance is one of the elements of stability in all Republican forms of government. We do not wish to be understood as intimating that this independency is without limitations, or that the conduct of the officer of one department may not be lawfully controlled and corrected by those of another department in cases where the power is conferred by law for such revision. But where no such power is conferred, the officers of one being the equal of those of the other department, his conduct cannot be a matter of official concern of the other, but the people must be looked to, to right whatever wrong, imaginary or otherwise, may have been done. It was manifestly the purpose of the constitution makers in the

[White, Auditor v. State *ex rel.* Denson.]

adoption of the provision above quoted to emphasize the independence of the judges of the supreme, circuit and chancery courts of this State, and to protect them from any apprehension of being reduced to penury and want perhaps, by adverse legislation as to their compensation during the terms of their office for which they were elected. It is a safeguard, after stripping them by other provisions of their right to earn a livelihood for themselves and those dependent upon them for sustenance, from the practice of their profession in any of the courts of this State, thrown around their only source of revenue, except such as may be derived from private means. It is an assurance to them that they are independent of all persons, classes of persons, assemblies, legislative or otherwise, that so long as they occupy, and discharge the duties of the office to which they have been elected by the people, that the compensation as provided by law at the time of their induction in office should remain inviolable. Such an assurance of guaranty of necessity has the effect of relieving them of all influence which might otherwise be attempted to be exerted upon them if it did not exist, and places the judges above and beyond the reach of any intimidation of legislative action. It tends to make a bold and fearless judiciary; the bulwark of the rights and liberties of the people. It was doubtless these considerations that prompted its adoption. While some restrictions are placed upon senators, representatives, and the governor, with reference to holding any other office during the term for which they are elected, yet we do not find any prohibition against the pursuit by them of their professions or avocations. As accentuating the view that the consideration we have expressed entered into the adoption of the provision under discussion, it is noteworthy that there is no prohibition against an increase by the legislature of the compensation of the judges during the term of their office; the reason obviously being, to leave the legislative department untrammelled to increase the fortification, if they see proper, of the position of independence secured as far as possible by the constitution. If we are correct as to the considerations which influenced its adoption, then what right of property does a

circuit judge acquire in the compensation, guaranteed to him under it?    We are fully aware and we entertain no doubt of its correctness, that this court has repeatedly held, that the right to an office is not property, and that if it be one of legislative creation, the office may be abolished by the creator without impairing any constitutional property rights of the incumbent.    And so, too, it must be conceded that the people undoubtedly have the right by legal methods, such as a constitutional convention, to abolish the circuit courts, or depose an incumbent thereof, or diminish or destroy the amount of his compensation he was to receive when elected.    But all this has nothing to do with the question of the property right of a circuit judge in and to the compensation secured to him under the constitution.    The people have not abolished the court, the office, or deposed the judge, and the right to his salary becomes fixed upon his induction into office, and is immutably fixed, so long as the constitution is permitted to stand as the organic law, and he cannot be deprived of it or any portion of it, so long as he remains in the office, unless he has been guilty of *neglect of duty* in his official capacity.

This brings us to the consideration of the other provision of the constitution bearing upon this question. It is found in Art. IV, section 48, and its language is as follows:    "It shall be the duty of the General Assembly to regulate by law the cases in which deductions shall be made from the salaries of public officers, for neglect of duty in their official capacities, and the amount of such deductions."

For the purpose of giving effect to this provision as to circuit judges section 923 of the Code was enacted which provides:    "If any circuit judge fails or neglects to attend any regular term of any circuit court which he takes upon himself to hold, or after attending, absents himself before the time fixed for final adjournment, unless the business is sooner disposed of, he forfeits the sum of twenty-five dollars for each and every day he is thus absent or fails to attend, to be deducted by the auditor from his salary; the absence or failure of such judge to be certified to the auditor by the clerk within ten days.

after the term under a penalty of one hundred dollars to be recovered by the solicitor in the circuit court of his county, in the name of the State, on two days' notice."

The only acts of a circuit judge constituting a neglect of duty in his official capacity under this section are his failure or neglect to attend any regular term of any circuit court which he takes upon himself to hold, or after attending absents himself before the time fixed for final adjournment, without disposing of the business of the court. As to whether such failure to attend or the absenting himself without disposing of the business after attending is so firmly declared by the statutes to be a neglect of official duty as to work a forfeiture of $25 for each and every day he is absent or fails to attend without reference to what may have been the cause of such failure or cause for absenting himself which, if he was permitted to make known, would show no neglect of duty under the provision of the constitution quoted above, it is unnecessary here to decide. And so, too, as to whether the statute does not go beyond the terms of the provision of the clause of the constitution in making those acts *per se* a neglect of official duty, and not affording the judge a right to be heard before he is deprived of his compensation, which we have shown is a property right, under our view of the issues made in this case does not arise. Nor whether the succeeding section (924) can be held to be curative of these defects, if they exist, which provides that the deduction must not be made, if the judge makes an affidavit that his failure to attend or his absence was on account of sickness of himself or family or inevitable accidents, etc., we will not here determine. The record shows that the petitioner in this case complied fully with the latter section, and that the Auditor made the deduction under section 930 of the Code, since if the deduction had been made under section 923, the Auditor, in order to have complied with its provision, would have been compelled to make a deduction of $25 for each day instead of $3.47 per diem. The provisions of the statute, in this respect, being mandatory, the deduction made by him cannot be sustained under it. It is, therefore, the constitutionality of section 930, as we have heretofore said, that is assailed, for it is only

under it the deduction can be justified. It reads: "For each day a special judge is paid under the provisions of the preceding section, the auditor must, under such rules and regulations as he may prescribe, cause to be deducted from the salary of the circuit judge and retained for the benefit of the State, the sum of three dollars and forty-seven cents, so that the circuit judge shall receive but one-half his usual salary for the time his place is filled by the special judge. But when the penalty prescribed by section 923 of this Code is enforced, the deduction herein provided for shall not be made; nor does this section apply when the circuit judge was, during such time, engaged in holding court elsewhere." It may be said that this section does not expressly diminish the compensation of the circuit judges, and that its only effect is to allow the State to retain out of the compensation of the judge, a certain sum after it has accrued on account of his failure to hold his court. The practical result, however, to the judge is that he loses one-half the compensation due him for each day he may have been absent from his court notwithstanding his failure to attend may have been superinduced by providential misfortune or other causes over which he has no control. It is certainly an indirect if not a direct method, of diminishing the amount of compensation he is entitled to receive and of depriving him of money which is his property without affording him an opportunity to be heard, either by himself or counsel, before a tribunal invested with judicial powers. It cannot be contended with any show of logic that the auditor is by this section vested with powers of a judicial nature. A cursory reading of it will demonstrate beyond cavil that he has no discretion; that no question is submitted to him for the exercise of his judgment. Whenever it is made known to him that the regular judge was absent, a special judge has performed the duties and was paid for such service, his duty is imperative to make the deduction, without reference to any excuse, legal or otherwise, of the judge in default, and this he is bound to do without reference to the question as to whether such default was a neglect of official duty. Should it come to his

knowledge, as in the case under consideration, that the judge was wholly without fault, he is nevertheless powerless from making the deduction, notwithstanding the constitution only authorizes such deduction or diminution to be made in cases of "neglect of duty in his official capacity." Nor is it of consequence that this section was in force when the judge was inducted into office. It is only for neglect of official duty that the constitution authorizes the deduction to be made. To permit the deduction to be made for failure to conform to legislative requirements, which do not amount to neglect of official duty within the meaning of these words as they are used in the constitution, would be in effect to destroy the organic law and supplant unwarranted legislative enactments in its stead. We cannot doubt that the framers of the present constitution used the words "neglect of duty" in the sense and meaning which has been accorded to them by the courts, and having been thus used, the legislature cannot enlarge their scope and meaning. "To neglect is to omit by carelessness or design."—*New York Guaranty Co. v. Gleason,* 53 Howard's Pr. (N. Y.) 127. Neglect means "omission or forebearance to do a thing that can be done or that is required to be done."—16 Am. & Eng. Ency. Law, 385, and note 2. There must be not only a failure by carelessness or design to perform the duty required to be performed, but the party failing must have the capacity to perform the acts required of him as they should be done, provided the incapacity is not superinduced by his fault or the result of his own misconduct. The nature of judicial duties is such, that a judge is under no duty to undertake the discharge of them when without his fault he is mentally or physically unfit to perform them. On the contrary, we may affirm, that when from any cause his physical or mental condition is such as to impair his capacity to discharge the responsible duties required of him, it is his duty not to undertake a performance of them; and this too, without reference to the cause which precipitated such incapacity. No one doubts that if his incapacitated condition is the result of his own act or misconduct, this would be a neglect of official duty. But if his condition is the result of the serious illness of his

mother or other causes over which he has no control, providential in their character, it is not and cannot be a breach of duty but a misfortune to "which all flesh is heir." It is against the intent of the constitution and the policy of our government that he should attempt to determine the property rights of parties litigant or pass upon the rights of the commonwealth and the citizen charged with crime, involving the maintenance of the law to the end of depriving a citizen of life or liberty, when physically or mentally disabled. The character of his duties are too consequential in their results, of too great importance to a just administration of the law, and decisions rendered by him, and his manner of conducting the trials of causes are too potential in their moral effect upon the people, to say nothing of the consequences to litigants in his court, to punish him by a diminution of his salary for his failure to hold his court when his mental or physical condition, without fault on his part, is such as to render him incapable of doing so. We feel constrained to hold section 930 of the Code unconstitutional. The correctness of our conclusion is supported by the following well considered cases of other courts under statutes and constitutional provisions very similar to ours.—*Auditor v. Adams*, 13 B. Mon. (Ky.) 150; *Burch, Comptroller v. Baxter*, 12 Heisk. (Tenn.) 601; *Ex parte Tully*, 38 Am. Dec. 33.

The judgment of the city court is affirmed.