JOHN YONTZ, ADMINISTRATOR OF JOSE DOLORES PACHECO, DECEASED, APPELLANT, *v.* THE UNITED STATES.

Where a grant of land in California had this clause, viz: "The tract of which grant is made is of the extent mentioned in the plan, which goes with the expediente, with its respective boundaries; the officer giving the possession

shall cause it to be measured, according to the ordinance, to mark boundaries; the surplus to remain for the nation, for its uses," according to the face of the grant, it must be confined to two leagues mentioned in the petition. Otherwise, there could be no surplus.

As there was no legal title, but only an equity, this court holds, according to previous decisions, that the petition and concession must be taken together, in which case the result would be the same, viz: that the claimant must be confined to two leagues.

THIS was an appeal from the District Court of the United States for the northern district of California.

The case is stated in the opinion of the court.

It was argued by *Mr. Goold* for the appellant, upon which side there was also a brief by *Mr. Volney E. Howard*, and by *Mr. Stanton* for the United States.

Mr. Justice CATRON delivered the opinion of the court.

Yontz prosecutes this appeal as administrator of Jose Dolores Pacheco, who died pending the suit below.

There is no controversy in relation to the validity of the grant, but only as respects the quantity confirmed by the District Court, being two square leagues. The claimant insists that he is entitled to a survey and patent from the United States corresponding to the out-boundaries embraced in his diseno, and the description given of the rancho in the Governor's grant, which recites: "Whereas citizen Jose Dolores Pacheco has sought to obtain for his personal benefit and that of his family the place lying between the 'creek or ravine' of La Tasajera and the place of 'San Ramon,' bounded by the house of the same place of San Ramon down to the 'dead trees,' (palos secos,) and from this point, taking by the 'Tular' to the 'high hill' (Loma Alta) along the creek or ravine of said Tasajera, and along the range of hills (sierra) and the land of citizen Bartolo Pacheco." After which the conditional clause follows, to wit: "The tract of which grant is made is of the extent mentioned in the plan, which goes with the expediente, with its respective boundaries. The officer giving the possession shall cause it to be measured, according to the

ordinance to mark boundaries; the surplus to remain for the nation, for its uses."

Pacheco petitioned Governor Figueroa for two leagues of land, in June, 1834, lying within the boundaries set forth in the foregoing description and plan. He then failed to have his petition favorably considered by the Governor, because opposition was made by the mission of San Jose.

On the 30th of November, 1837, Pacheco again petitioned Governor Alvarado to grant him the same land; he says: "At this time I confine the application for two leagues, more or less, according to the boundaries of said mission of San Jose to the south; the plan of which I enclose herein again." The Governor referred this second petition to the council of San Jose, and they reported the land to be vacant, and that it could be adjudicated for colonization. On this report the Governor made the grant. It was confirmed by the Departmental Assembly, May 12th, 1840, with directions, "that the expediente be returned to his excellency the Governor, for the proper ends." No final document in consummation of a perfect title issued to the grantee; nor was judicial possession given of the land, and in this unsurveyed condition the claim stood when the United States acquired the country.

If we are bound to take the last paper issued by the Governor as concluding all reference to preceding steps in the progress of obtaining a complete title, then we find the grant inconsistent on its face. The argument urged on our consideration is, that there are specific boundaries given as to the extent of the land granted, so that it is clearly a grant of all the land within these prescribed limits. In contravention of this assumption, the clause above recited directs that the officer giving judicial possession shall cause the land to be measured, according to the ordinance, and to mark boundaries; "*the surplus to remain for the nation, for its uses.*" If it be true that the boundaries are conclusively defined in the grant, then no surplus could be thrown off by the survey. But if two leagues are to be surveyed within the larger limits, then the clause is consistent.

In the next place, it is insisted that the clause is a condition,

usual in all these grants, and amounts to little more, than a mere formality. Ascribing to the clause usually declaring quantity only this degree of credence, then we are thrown on the recitals of the grant, and bound to look behind it, to the incipient steps, and to other title papers referred to, and from all these to ascertain how much land was intended to be conceded.

The claimants come before us, presenting an equity; their title not being completed, because the land has never been surveyed, and severed from the public domain. Hanson's case, 16 Peters, 200; Rosa Pacheco's case, now decided.

We are called on to adjudge what the equities of claimants are; and to do this, it is proper "to look at all the several parts and ceremonies necessary to complete the title, and to take them together as one act." 10 How., 372.

This court has uniformly held, in cases coming up by appeal from the District Courts of Missouri and Florida, which adjudicated Spanish claims under the act of 1824, that the petition to the Governor for land and his concession must be taken as one act, and the decree usually proceeded on the petition, which described the land as respected locality and quantity. This was necessarily so, as the concession was often a mere grant of the request, without other description than the petition contained.

And this is manifestly one of the rules of decision governing the tribunals in California, prescribed by the 11th section of the act of March 3d, 1851. In this case the grant refers to the previous steps, (including the petition, asking for only two leagues,) and carries them along with the grant.

From all the acts, taken together, it is manifest that the decree of the District Court, restricting the quantity to two square leagues, must be affirmed, if so much land is found within the out-boundaries of the tract of country set forth in the grant and diseno; otherwise, the less quantity.