## HALL *v.* WISCONSIN.

A contract between a State and a party, whereby he is to perform certain duties for a specific period at a stipulated compensation, is within the protection of the Constitution; and on his executing it he is entitled to that compensation, although before the expiration of the period the State repealed the statute pursuant to which the contract was made.

ERROR to the Supreme Court of the State of Wisconsin. The facts are stated in the opinion of the court.

*Mr. Luther S. Dixon* for the plaintiff in error. No counsel appeared for the defendant in error.

MR. JUSTICE SWAYNE delivered the opinion of the court.

This is a writ of error to the Supreme Court of Wisconsin. The case we are called on to consider is thus disclosed in the record: —

By an act of the legislature, entitled " An Act to provide for a geological, mineralogical, and agricultural survey of the State," approved March 3, 1857, James Hall, of the State of

New York, the plaintiff in error, and Ezra Carr and Edward Daniels, of Wisconsin, were appointed "commissioners" to make the survey. Their duties were specifically defined, and were all of a scientific character.

They were required to distribute the functions of their work by agreement among themselves, and to employ such assistants as a majority of them might deem necessary.

The governor was required "to make a written contract with each commissioner" for the performance of his allotted work, and "the compensation therefor, including the charge of each commissioner;" and it was declared that "such contract shall expressly provide that the compensation to such commissioners shall be at a certain rate per annum, to be agreed upon, and not exceeding the rate of two thousand dollars per annum, and that payment will be made only for such part of the year as such commissioner may actually be engaged in the discharge of his duty as such commissioner."

In case of a vacancy occurring in the commission, the governor was empowered to fill it, and he was authorized to "remove any member for incompetency or neglect of duty."

To carry out the provisions of the act, the sum of $6,000 per annum for six years was appropriated, "to be paid to the persons entitled to receive the same."

By an act of the legislature of April 2, 1860, Hall was made the principal of the commission, and was vested with the general supervision and control of the survey. He was required to contract with J. D. Whitney and with Charles Whittlesey for the completion within the year of their respective surveys. To carry into effect these provisions, the governor was authorized to draw such portion of the original appropriation, not drawn previous to the 29th of May, 1858, as might be necessary for that purpose; the residue to be otherwise used as directed.

By a subsequent act of March 21, 1862, both the acts before mentioned were repealed without qualification.

On the 29th of May, 1858, Hall entered into a contract with the governor, whereby it was stipulated on his part that he should perform the duties therein mentioned touching the survey, " this contract to continue till the third day of March,

1863, unless the said Hall should be removed for incompetency or neglect of duty, . . . or unless a vacancy shall occur in his office by his own act or default."

On the part of the State it was stipulated "that the said Hall shall receive for his compensation and expenses, including the expense of his department of said survey, at the rate of $2,000 per annum. . . . *Provided*, that for such time as said Hall or his assistants shall not be engaged in the prosecution of his duties, according to the terms of said act and of this contract, deduction shall be made, *pro rata*, from the sum of his annual compensation and expenses."

Hall brought this action upon the contract. The declaration avers that immediately after the execution of the contract he entered upon the performance of the duties thereby enjoined upon him, and continued in their faithful performance until the time specified in the contract for its expiration, to wit, the 3d of March, 1863; that he was not removed by the governor for incompetency or neglect, nor was any complaint ever made by the governor against him; that he never at any time, directly or indirectly, assented to the repeal of the acts of 1857 and 1860; and that thereafter he continued in the performance of his labors the same as before, and that for the year ending March 3, 1863, he devoted his whole time and skill, without cessation, to the work.

He avers further, that for his services performed prior to March 3, 1862, he was fully paid, but that for the year ending March 3, 1863, he had received nothing; that payment was demanded and refused on the 3d of December, 1863, and that the defendant is, therefore, justly indebted to him in the sum of $2,000, with interest from the date last mentioned.

He avers, finally, that on the 30th of January, 1875, he presented his claim to the legislature by a proper memorial, and that its allowance was refused.

The State demurred upon two grounds:—

1. That the complaint did not show facts sufficient to constitute a cause of action;

2. That it appeared upon the face of the complaint that the cause of action did not accrue within six years before the commencement of the action.

In support of the first objection, it was insisted that the employment of the plaintiff was an office, and that the legislature had therefore the right to abolish it at pleasure. For the plaintiff, it was maintained that there was a contract, and that the repealing act impaired its obligation in violation of the contract clause of the Constitution of the United States.

The court sustained the demurrer upon the first ground, and the plaintiff declining to amend, dismissed his petition. The opinion of the court is limited to the first point, and ours will be confined to that subject. The whole case resolves itself into the issue thus raised by the parties.

No question is made as to the suability of the State. The proceeding is authorized by a local statute. The question raised by the record is within our jurisdiction. In the exercise of that jurisdiction in such cases this court is unfettered by the authority of State adjudications. It acts independently, and is governed by its own views. *Township of Pine Grove* v. *Talcott,* 19 Wall. 666.

The question to be considered was before us in *United States* v. *Hartwell,* 6 id. 385. It was there said that "an office is a public station or employment conferred by the appointment of government. The term embraces the ideas of tenure, duration, emolument, and duties. . . . A government office is different from a government contract. The latter, from its nature, is necessarily limited in its duration and specific in its objects. The terms agreed upon define the rights and obligations of both parties, and neither may depart from them without the assent of the other."

In *United States* v. *Maurice* (2 Brock. 96), Mr. Chief Justice Marshall said: " Although an office is an employment, it does not follow that every employment is an office. A man may certainly be employed under a contract, express or implied, to perform a service without becoming an officer."

The case before us comes within the definition we have taken from *United States* v. *Hartwell, supra.*

The statute under which the governor acted was explicit, that he should " make a written contract with each of the commissioners aforesaid, expressly stipulating and setting forth the nature and extent of the services to be rendered by each,

and the compensation therefor," and that "such contract" should expressly provide that the compensation of each commissioner should be at a certain rate per annum, to be agreed upon, and not exceeding $2,000 per annum for the time such commissioner may be actually engaged.

The action of the governor conformed to this view. The instrument executed pursuant to the statute recites that it is an "agreement" between the governor as one party, and Hall, Carr, and Randall, the commissioners, as the other. They severally agreed to do what the statute contemplated, and he agreed to pay all that it permitted.

The names and seals of the parties were affixed to the agreement, and its execution was attested by two subscribing witnesses, as in other cases of contract.

Where an office is created, the law usually fixes the compensation, prescribes its duties, and requires that the appointee shall give a bond with sureties for the faithful performance of the service required. To do all this, if the employment were an office, by a contract with the officer and without his bond would, to say the least, be a singular anomaly.

The acts of 1857 and 1860 both speak of Hall as " of Albany, N. Y." He was not, therefore, a citizen or a resident of the State of Wisconsin.

It is well settled in Wisconsin that such a person cannot be a public officer of that State. *State, ex rel. Off*, v. *Smith*, 14 Wis. 497 ; *State, ex rel. Schuet*, v. *Murray*, 28 id. 96.

In *United States* v. *Hatch*, the Supreme Court of Wisconsin decided that the term "civil officers" as used in the organic law (act of Congress of April 20, 1836) embraces only those officers in whom a portion of the sovereignty is vested, or to whom the enforcement of municipal regulations or the control of the general interests of society is confided, and does not include such officers as canal commissioners. 1 Pinn. (Wis.) 182.

In *Butler* v. *The Regents of the University* (32 Wis. 124), the same court held, without dissent, that a professor in the State university, appointed for a stated term with a fixed salary, was not a public officer in such a sense as prevented his employment from creating a contract relation between himself and the regents.

It is hard to distinguish that case in principle from the one before us. .

In a sound view of the subject it seems to us that the legal position of the plaintiff in' error was not materially different from that of parties who, pursuant to law, enter into stipulations limited in point of time, with a State, for the erection, alteration, or repair of, public buildings, or to supply the officers or employés who occupy them with fuel, light, stationery, and other things necessary for the public service. · The same reasoning is applicable to the countless employés in the same way, under the national government. '

It would be a novel and startling doctrine to all these classes of persons that the government might discard them at pleasure, because their respective employments were public offices, and hence without the protection of contract rights.

It is not to be supposed that the plaintiff in error would have turned his back upon like employment, actual or potential, elsewhere, and have stipulated as he did to serve the State of Wisconsin for the period named, if the·idea had been present to his mind that the State had the reserved power to break the relation between them whenever it might choose to do so. Nor is there anything tending to show that those who acted in behalf of the State had any such view at that time. All the facts disclosed point to the opposite conclusion as to both parties.

Undoubtedly, as a general proposition, a State may abolish any public office created by a public law (*Newton* v. *Commissioners*, 100 U. S. 559), but even with respect to those offices the circumstances may be such as to create an exception. In *Trustees of Dartmouth College* v. *Woodward*, Mr. Justice Story. said : "It is admitted that the State legislatures have power to enlarge, repeal, and limit the authorities of public officers in their official capacities, in all cases where the constitutions of the States respectively do not prohibit them ; and this, among others, for the very reason that there is no express or implied contract that they shall always, during their continuance in office, exercise such authorities. . . . But when the legislature makes a contract with a public officer, as in case of a stipulated salary for his services during a limited period, this, during

the limited period, is just as much a contract, within the purview of the constitutional prohibition, as a like contract would be between two private citizens." 4 Wheat. 518, 694.

When a State descends from the plane of its sovereignty, and contracts with private persons, it is regarded *pro hac vice* as a private person itself, and is bound accordingly. *Davis* v. *Gray*, 16 Wall. 203.

The general government has no powers but such as are given to it expressly or by implication.

The States and their legislatures have all such as have not been surrendered, or prohibited to them. *Gilman* v. *Philadelphia*, 3 Wall. 713. And see also 2 Greenleaf's Cruise, 67.

That the laws under which the governor acted, if valid, gave him the power to do all he did, is not denied. We will not, therefore, dwell upon that point. The validity of those laws is too clear to admit of doubt. It would be a waste of time to discuss the subject.

We are of the opinion that the Supreme Court of the State erred in the judgment given. It will, therefore, be reversed, and the case remanded for further proceedings in conformity with this opinion.

*So ordered.*