154 So. 77

**HARD, State Comptroller, v. STATE ex rel. BAKER.**

**3 Div. 86.**

Supreme Court of Alabama.

March 15, 1934.

Rehearing Denied April 26, 1934.

518

John H. Peach, of Sheffield, for appellant.

Steiner, Crum & Weil and Sam Rice Baker, all of Montgomery, for appellee.

BOULDIN, Justice.

The question presented by the present record may be briefly stated thus:

In April, 1930, the state committee of public health elected Dr. J. N. Baker as state health officer with a term of office of five years, and at a salary of $7,500 per annum, which action was ratified by the state board of health.

Later, October, 1932, owing to the straitened economic conditions, the salary was, by mutual agreement between the state health officer and state board of health, reduced to $5,250 per annum.

At the time of such election, the state board of health entered into a contract to pay him the stipulated salary for the period of five years. Dr. Baker has faithfully performed the duties of state health officer to this date.

By an act approved April 14, 1933 (Gen. Acts 1933 [Ex. Sess.] p. 124), known as the Lapsley-Lusk Bill, making sweeping reductions in the salaries of the officers and employees of the state and its several departments, the salary of the state health officer was fixed at $3,600 per annum.

The state comptroller, following this statute, declined to issue a warrant for the salary of the state health officer for the months of May, June, July, August, and September on the basis theretofore fixed by the state board of health.

The present proceeding by mandamus was brought by the state health officer, upon approval or direction of the state committee of public health, acting for the state board of health, to test whether the salary of the state health officer is that fixed by the state board of health or that fixed by legislative act.

On the one hand, it is insisted such salary is fixed by contract made by the state, through a duly authorized state agency; that the act of the Legislature is in violation of article 1, § 10, of the Federal Constitution, ordaining: "No State shall * * * pass

any * * * Law impairing the Obligation of Contracts"; and in violation of sections 22 and 95 of the Constitution of Alabama to the same effect; and therefore the act in so far as it affects the salary of the state health officer during his present term is null and void.

The salary for the month of September, 1933, being included, the result of such contention is to take the salary of the state health officer without the influence of the Sparks Amendment.

On the other hand, it is insisted the legislative act in question is within the sovereign power of the state over state agencies of its own creation for governmental purposes; that the state board of health, vested by legislative act with the power to elect a state health officer, fix a term of office, and fix his salary, within a statutory limit, is not vested with the power to make the term of office, or the salary, a matter of contract beyond the control of the Legislature; that legislative control over state agencies of its own creation and control over disbursement of public funds of its own appropriation for such governmental purpose is supreme.

This statement of the issues involved is sufficient to disclose their grave import.

Our system of laws, enacted under the police power, for the promotion of safeguarding of the public health, as they now exist, have been the outgrowth of legislation for more than half a century. Besides numerous acts dealing with special matters, there have been numerous compilations, such as the act of 1903 (Gen. Acts 1903, p. 499); the Code of 1907, § 698 et seq.; Act of 1919 (Gen. Acts 1919, p. 909); the Code of 1923, § 1046 et seq., and finally Michie's Code, § 1046 et seq., incorporating acts of the 1927 session.

This legislative agency or set-up for the administration and enforcement of public health laws is somewhat original in legislative concept.

Broadly speaking, this important public service is committed to the organized medical profession of the state.

Thus section 1 of the act of 1903, now abridged as section 1046 of the Code, read: "The Medical Association of the State of Alabama, organized in accordance with the provisions of the Constitution adopted at the annual meeting of the Association, held at Tuscaloosa in March, 1873, and confirmed by an act of the General Assembly, approved February 19, 1875, is hereby constituted the State Board of Health."

By the act of 1919, the state board of censors, of the State Medical Association, as then or thereafter constituted by law, was made the state committee of public health. Code, § 1047.

That the health department might function throughout the year, when the state board of health (State Medical Association acting as such) was not in session, it is enacted that at such times the state committee of public health (board of censors acting as such) shall act for the state board of health, and have all the prerogatives of such board, including the power to make rules and regulations; and, when the committee is not in session, the state health officer shall act for said board and committee; his action (when revocable in nature) being subject to revocation by such board or committee. Code, § 1048.

Code, § 1053, as amended by the act of 1927 (Gen. Acts 1927, pp. 39, 40), reads:

"*State Health Officer; Election; His Duties and Powers.* The State Board of Health shall elect an executive officer to be known as the State Health Officer, and shall fix his term of office and salary, provided that the latter shall not exceed seven thousand five hundred dollars per annum. The State Health Officer so elected shall, under the direction of the State Board of Health, exercise general supervision over county boards of health and county and municipal health officers, and shall promptly report to said county boards of health any delinquencies of official duty on the part of said county and municipal health officers, which may come to his knowledge; shall keep himself informed in regard to all infectious, contagious, and pestilential diseases, which may be in danger of invading the State, and shall, so far as authorized by law, take prompt measures to prevent such invasion; shall keep the Governor informed as to the health conditions prevailing in the State, especially as to outbreaks of any of the diseases enumerated in Section 1092 of this Code, and shall submit to the Governor such recommendations as he deems proper to control such outbreaks."

Besides the duties and powers thus imposed and conferred by law on the state health officer, we note the following:

He appoints all subordinate officers and employees in the administration of the public health and quarantine laws, subject to the approval of the state board or county boards of health in their respective jurisdictions. Code, § 1150.

He is designated as the officer to whom

county health officers shall report infectious diseases. Code, § 1058 (as amended by Gen. Acts 1927, p. 775).

He may remove county health officers for failure of duty, subject to a right of appeal to the state committee of public health. Code, § 1052, subd. (5).

He has supervision over county quarantine officers. Code, § 1063, as amended by Gen. Acts 1927, p. 102.

When quarantine has been proclaimed, he may amend the regulations as occasion demands, increase or decrease the quarantine area, subject to approval of the state board of health. Code, § 1210.

The annual appropriation from the state treasury for the general use of the state board of health "shall be paid to the state health officer on his requisition approved by the governor." Code, § 1159.

The state board of health is the supreme supervisory power in this governmental unit, the state health department. It has jurisdiction and authority "to exercise general control over the enforcement of the laws relating to public health," detailed largely in Code, § 1051 (as amended by Gen. Acts 1927, p. 774), and further elaborated throughout the chapter on Health and Quarantine.

We have something of a federated system with county boards of health and county health officers, with defined powers and duties, subject to the supervision and control of the state board of health. Code, §§ 1049, 1052, 1055, and § 1058, as amended by Gen. Acts 1927, p. 775.

In Parke v. Bradley, 204 Ala. 455, 86 So. 28, the entire system was attacked as unconstitutional, upon the ground of an attempted delegation of legislative powers to a private corporation, the State Medical Association. This court, in a clear and well-considered opinion, by Justice Somerville, traced the legislative history and defined the legal status of the state board of health. It was held that no governmental functions are conferred upon the State Medical Association, as a private corporation, but, taking a ready-made organization composed of men best fitted by professional learning and experience to deal with matters of public health, the law converted the association into a state board of health, a public agency, to which was committed statutory duties and powers in the premises.

Dealing directly with the question whether the Legislature had sought to delegate legislative powers to the state board of health, as a public agency, the court there said: "Its powers are purely executive and administrative, except that under subdivision (6) it is authorized 'to adopt and promulgate rules and regulations providing proper methods and details for administering the health and sanitary laws of the state, which rules and regulations shall have the force and effect of law, and shall be executed and enforced by the same courts, bodies, officials, agents and employees as in the case of the health laws.'" Parke v. Bradley, 204 Ala. 455, 458, 86 So. 28, 30.

This power to make administrative rules and regulations in aid of the enforcement of the law, and given vitality by the law, was held, as in many other cases, not a delegation of legislative power forbidden by the Constitution.

This quasi legislative power to make rules and regulations was further considered and given application in Wheeler v. River Falls Power Co., 215 Ala. 655, 111 So. 907.

It appearing, therefore, that the functions of the state board of health are executive and administrative, and its rule-making power directed to the same ends, the reason for an executive officer through whom it can function is not far to seek; hence a state health officer, expressly so named, and declared to be an executive officer; elected by the board composed of men best informed as to his fitness for the highly specialized professional duties in hand, such officer being taken, if desired, from their own group, a member of the State Medical Association, made by law the state board of health.

The state health officer is therefore the executive officer of a governmental agency engaged in executive functions, the execution of laws and regulations for the protection of the public health; his duties and powers defined and conferred by law. He is part and parcel of the governmental set-up, the active salaried man of greatest responsibility, through and by whom the whole organization functions in large measure over the entire state.

With this clear and obvious concept of the status of the state health officer, we come to consider the nonimpairment contract clause of the Federal Constitution and its application to his salary.

In the first place, we note this clause is an absolute inhibition against state laws that impair the obligation of contracts which are lawful, and to which it is applicable. It applies to contracts made by the state, or its au-

thorized agencies, the same as contracts between private parties. Hall v. Wisconsin, 103 U. S. 5, 26 L. Ed. 302; 12 C. J. p. 996, § 608.

■ It strikes down state constitutional as well as statutory provisions which impair existing contracts. Los Angeles v. Los Angeles City Water Co., 177 U. S. 558, 20 S. Ct. 736, 44 L. Ed. 886; 12 C. J. p. 988, §§ 595, 596.

■ It applies, not only to laws modifying the terms of a contract so as to adversely affect vested rights thereunder, but to laws which have the effect of abrogating or annulling the contract.

■ The annulment of such a contract by any law, whether by repeal or modification, is a most palpable form of impairment of such contract. Red Rock v. Henry, 106 U. S. 596, 1 S. Ct. 434, 27 L. Ed. 251; Hall v. Wisconsin, supra; Mays, Adm'r, v. Williams, 27 Ala. 267; 12 C. J. p. 1057, §§ 702, 703.

These propositions seem nowhere to be questioned.

In view of these principles, the application of this impairment clause to state governmental agencies, the salaries of officers or employees, constituting a part of such agencies, and engaged in the functions such agencies are created to perform, becomes a vital question in maintaining the sovereignty of the state over its own governmental functionaries, and the expenditure of public moneys appropriated for such governmental ends.

■ The application of the impairment clause to any given case is a federal question, and the decisions of the Supreme Court of the United States the final authority. Northern Pac. R. Co. v. Minnesota, 208 U. S. 583, 28 S. Ct. 341, 52 L. Ed. 630; 12 C. J. p. 1057, § 700, and notes.

■ In studying vested contract rights under this nonimpairment clause, the legal mind naturally turns first to the famous case of The Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 628, 629, 630, 4 L. Ed. 629. The following excerpts from the opinion by Chief Justice Marshall are pertinent:

"Taken in its broad unlimited sense, the clause would be an unprofitable and vexatious interference with the internal concerns of a State, would unnecessarily and unwisely embarrass its legislation, and render immutable those civil institutions, which are established for purposes of internal government, and which, to subserve those purposes, ought to vary with varying circumstances. That as the framers of the constitution could never have intended to insert in that instrument a provision so unnecessary, so mischievous, and so repugnant to its general spirit, the term 'contract' must be understood in a more limited sense. * * *

"That the framers of the constitution did not intend to retrain (restrain) the States in the regulation of their civil institutions, adopted for internal government, and that the instrument they have given us, is not to be so construed, may be admitted."

Speaking of the act of incorporation or charter involved, it was further said: " * * * If it create a civil institution to be employed in the administration of the government, or if the funds of the college be public property, or if the State * * * as a government, be alone interested in its transactions, the subject is one in which the legislature of the State may act according to its own judgment, unrestrained by any limitation of its power imposed by the constitution of the United States."

Speaking of the Dartmouth College Case in Newton v. Commissioners of Mahoning County, 100 U. S. 548, 558, 559, 25 L. Ed. 710, it was said: "The judgment of the court in that case proceeded upon the ground that the college was 'a private eleemosynary institution, endowed with a capacity to take property for purposes unconnected with the government, whose funds are bestowed by individuals on the faith of the charter.'"

The opinion in the Newton Case proceeds:

"The legislative power of a State, except so far as restrained by its own constitution, is at all times absolute with respect to all offices within its reach. It may at pleasure create or abolish them, or modify their duties. It may also shorten or lengthen the term of service. And it may increase or diminish the salary or change the mode of compensation. Butler et al. v. Pennsylvania, 10 How. 402 [13 L. Ed. 472].

"The police power of the States, and that with respect to municipal corporations, and to many other things that might be named, are of the same absolute character. Cooley, Const. Lim., pp. 232, 342; The Regents v. Williams, 9 Gill & J. (Md.) 365 [31 Am. Dec. 72].

"In all these cases, there can be no contract and no irrepealable law, because they are 'governmental subjects,' and hence within the category before stated.

"They involve public interests, and legislative acts concerning them are necessarily public laws. Every succeeding legislature possesses the same jurisdiction and power with

respect to them as its predecessors. The latter have the same power of repeal and modification which the former had of enactment, neither more nor less. All occupy, in this respect, a footing of perfect equality. This must necessarily be so in the nature of things. It is vital to the public welfare that each one should be able at all times to do whatever the varying circumstances and present exigencies touching the subject involved may require. A different result would be fraught with evil."

The same principle has been several times recognized in our own decisions. Thus, in Stevens v. Thames, 204 Ala. 487, 488, 86 So. 77, 78, opinion by Chief Justice Anderson, it was said that a state agency is "chargeable with notice of that legal principle that the state could make no legal binding contracts with reference to the future maintenance, management, and control of its governmental or other public agencies. * * * In other words, the contractual clause of the federal and state Constitutions has no application to obligations on the part of the state as to the location, conduct, or management of its own institutions. Newton v. Board of County Commissioners of Mahoning County, 100 U. S. 548, 25 L. Ed. 710."

We quote the following from Birmingham Mineral Railroad Co. v. Parsons, 100 Ala. 662, 665, 13 So. 602, 603, 27 L. R. A. 263, 46 Am. St. Rep. 92: "As is well said in American Union Tel. Co. v. Western Union Tel. Co., 67 Ala. 26, 32 [42 Am. Rep. 90]: 'The police power of a state is a most important power, essential to its very existence, and has been declared by the supreme judicial interpreter of the federal constitution to embrace "the protection of the lives, health, and property of her citizens, the maintenance of good order, and the preservation of good morals;" and the legislature cannot, by any contract, divest itself of the power to provide for these objects.' Boston Beer Co. v. Massachusetts, 97 U. S. 25 [24 L. Ed. 989]." See, also, Ex parte Lambert, 52 Ala. 79.

We have quoted extensively to make clear the fundamental bases or reasons on which the decisions are rested. A vast array of cases from the federal and state courts, restating and making application of these principles, could be cited and reviewed. They are compiled in various notes in 12 C. J., among them note 71, p. 992, and several notes under section 643, p. 1017.

Is the salary of the state health officer subject to the control of the Legislature under these thoroughly settled principles?

The contention that it is not, but is protected under the impairment clause of the Federal and State Constitutions, is mainly rested on the case of State v. Sanders, 187 Ala. 79, 65 So. 378, L. R. A. 1915A, 295.

In that case the state board of health had increased the salary of the state health officer during the term fixed by the board, and later the state brought suit to recover the amount of such increase upon the ground that the increase in salary was prohibited under section 281 of the state Constitution, which reads: "The salary, fees, or compensation of any officer holding any civil office of profit under this state or any county or municipality thereof, shall not be increased or diminished during the term for which he shall have been elected or appointed."

The court held the state health officer not within this inhibition, and his salary was subject to increase during the term originally fixed by the board of health.

In course of argument, the opinion said: "It is true that they may be officers, but they are officers of the board or commission which appoints or elects them, and not of the public, the state, the county, the municipality, within section 281. It is in this sense, we think, that the statute in question speaks of appellee as the 'state health officer.' * * * No part of the sovereign power of the state is by the statute delegated to appellee, although he is named in the statute as the 'state health officer.' The delegation of such authority and power is to the 'state board of health,' which is appellee's creator and master, whom he serves. He does not serve the state; he serves the board which elects him. That statute expressly provides that whatever he does he shall do 'under the direction of the state board of health.'" State v. Sanders, 187 Ala. pp. 83, 84, 65 So. 378, 379, L. R. A. 1915A, 295.

With reference to this last announcement, we need only refer to the present statutory provisions creating the office conferring positive law made duties and powers of governmental character, power to appoint and to remove subordinate officers, powers of supervision, the custodian and disburser of public funds, and generally the appropriate duties and powers of an executive officer of an executive state agency.

Not reviewing other things said in arguendo in the Sanders Case, the chief ground upon which the decision is based is that no tenure of office was fixed by law; that this was left to the appointive power; that, although the board had fixed a term of office as per statute, as well as his salary, he was subject to removal, his term of office subject to change

at the pleasure of the board. Concluding the opinion, it was said: "The board, as we have before shown, could employ by the day, by the week, month, or year, and change this at will, as well as the amount of compensation, provided it does not exceed the rate of $5,000 per annum. For this reason it is wholly impracticable to apply the provision"—meaning section 281 of the Constitution. State v. Sanders, 187 Ala. p. 90, 65 So. 378, 381, L. R. A. 1915A, 295.

Clearly, no question of the application of the contract impairment clause, no question of the sovereign power of the Legislature over the office, or the salary attached thereto was involved nor decided.

The only feature of the opinion thought to be of influence in this case is that reducing the state health officer to the position of an officer or mere employee of the state board of health.

■ The technical relation of officer or employee of a government agency is not a controlling consideration in applying the impairment clause now invoked.

The real issue is whether he is a part and parcel of a government unit, performing duties prescribed by law, and paid a salary therefor out of public funds. If so, the legislative power which gives life can take it away. The sovereign power of control over the agency itself and the salaries of its functionaries is in the Legislature.

■ It seems to be conceded, and certainly it cannot be questioned, that the Legislature may abolish the office of state health officer, or even the state board of health, at pleasure by repealing the statutes of their creation.

It is said this has not been done, and, while he is in office, his salary, as fixed by contract, is protected. The argument confuses section 281 of our Constitution with the contract clause here invoked. The case of Butler et al. v. Pennsylvania, 10 How. 402, 13 L. Ed. 472, was a case of reduction of salary during the term. The court pointed out the power to repeal, and, if the contract clause was applicable, a long list of pensioners and sinecures would follow.

In Hall v. Wisconsin, 103 U. S. 5, 11, 26 L. Ed. 302, the court construed the contract as one by the state as one party, and a private person as the other party; and held the contract remained in force after the repeal of the statute under which it was made. Said the court: "When a State descends from the plane of its sovereignty, and contracts with private persons, it is regarded pro hac vice as

a private person itself, and is bound accordingly. Davis v. Gray, 16 Wall. 203 [21 L. Ed. 447]."

Would any one insist that the state was "descending from the plane of its sovereignty" in creating by legislative act the office of state health officer, or that the state board of health was doing so when performing the high duty of selecting a state health officer, fixing his term of office and salary within the limits fixed by law?

We would give emphasis to the fact that the statute does not mention contract in connection with the salary of the state health officer. Its terms are wholly different: An office, a term of office, a salary of an officer, in the same section with express provisions fixing his powers and duties, governmental in character.

Nothing indicates the Legislature had in mind anything other than the words import, a term and a salary, with the incidents usual to such designations.

In the Sanders Case the state board of health had done all the statute (section 1053) empowered it to do, yet it was held his tenure of service and his salary were subject to the control of the appointing power, no element of contract intervening. If following the terms of the statute had been construed as a contract, the basis of the decision would have been swept away.

It is pointed out in argument that the power to contract is conferred on the board by subdivision 16, section 1159, which reads: "To employ such clerks, agents and other employees, and to purchase property, materials, and supplies, and to enter into such contracts as may be considered expedient by said board in discharging its duties, or assisting in the discharge of the duties of other boards or officials having duties in connection with any of the health laws of the state."

This provision is not dealing in any way with the salary of the state health officer. It is in a section defining the uses to which the general appropriation made by the same section shall be applied, the money to be drawn from the state treasury by the state health officer, and applied by him to the several purposes named, and concludes with power to make appropriate contracts in the discharge of its duties in conserving the public health, such as purchasing material and supplies, employing clerks, agents, and other employees, etc.

The contracts in mind include those made by the state health officer as the active ex-

ecutive officer in charge; contracts wherein he represents the board as its executive officer contracting with outside parties.

██ We may observe that officers and employees, a part of a state agency or set-up, engaged in carrying on governmental activities, are chargeable with notice of legislative control over such agencies in the matter of salaries payable from public funds. It was so held in State Docks Commission et al. v. State ex rel. Jones, 227 Ala. 521, 150 So. 537, 547, par. 17, citing Stevens v. Thames, supra; State ex rel. Gaston v. Black, 199 Ala. 321, 74 So. 387.

This upon the oft-recognized principle that the law is read into the contract.

This rule, admittedly applicable to the right to abolish the office of state health officer, and so end his contract, applies with like force to a reduction in salary in dealing with the impairment clause. It is section 281 of our Constitution which protects the salary of a statutory officer during his term, but subject to the legislative power to end the term by abolishing the office.

As for the impairment clause, the power to repeal is the power to amend. The greater includes the less. Surely it would be a defenseless position to say the only way the Legislature can control the salaries of officials of a state agency is to destroy the agency, or the office.

██ Apart from any question of a legislative intent to confer on the board power to make the salary of the state health officer a matter of contract, our firm conviction is the state health officer, as before stated, is an integral part of the health department; may well be a member of the State Medical Association, and therefore one of the body incorporated into the state board of health; that his position is what the official name imports and the law declares, viz., the executive officer of an executive agency, the state board of health, the active head of the health department, with great responsibilities imposed by law, and therefore his salary is under the entire control of the Legislature. The Legislature cannot contract away the sovereignty of the state over agencies of its own creation. This is the basic reason why salaries of statutory officers cannot be made a matter of contract, beyond legislative control in so far as affected by the impairment clause.

If the Sanders Case, standing alone, would lead to a different conclusion, in the face of the settled construction of the impairment clause by the supreme authority on that question, as well as our own decisions following such construction, we could not follow it.

██ The suggestion that the Sanders Case has had legislative approval by recodification of the statute without change would have force in dealing with section 281 of our own Constitution. But it can have no place in the construction of the impairment clause not there involved.

We are asked to declare unconstitutional an express statute lowering such salary; an express legislative pronouncement that such salary is not protected by the contract impairment clause. The doctrine of implied legislative adoption of a prior construction cannot do service to strike down an express legislative act to the contrary.

We feel constrained to add that obviously the salary of the state health officer should be in keeping with his labors and responsibilities, and the importance of an unimpaired public health service.

██ Whatever mistake may have been made in the drastic cut of the Lapsley-Lusk Bill under emergency conditions is one of legislative discretion, not of legislative power, and can be remedied only by the Legislature.

The judgment of the circuit court is reversed and one here rendered denying the writ of mandamus and dismissing the petition.

Reversed and rendered.

ANDERSON, C. J., and GARDNER, BROWN, and FOSTER, JJ., concur.

FOSTER, Justice (specially concurring).

It is well settled that a public office is not a property right but a public trust. Beebe v. Robinson, 52 Ala. 66.

Subject to constitutional limitations, the Legislature has supreme power over the subject of creating and abolishing offices, fixing their term and salary. In the absence of the incidents of a contract or constitutional limitation, the existence of the term and salary, after once fixed, are subject to change in the legislative discretion. The creation of an office, fixation of the term and salary, with no more, do not amount to a contract. State v. Sanders, 187 Ala. 79, 65 So. 378, L. R. A. 1915A, 295; 12 Corpus Juris, 1017.

But the state has the power to contract with a public officer pertaining to the continued existence of his office during the term and for the amount of his salary thus fixed.

If the creation of a public office, provid-

ing for a definite term and salary, does not amount to a contract, without more, when one is elected to that office pursuant to law, then I do not understand why the same procedure should amount to a contract when an administrative office is created, but not properly termed a civil office of profit within section 281, Constitution. The same language in one instance should not be held to be a contract and in another not a contract. Such language should have the same meaning in respect to both situations.

I agree with the argument in the opinion prepared by Justice KNIGHT. It would lead to the result he has reached if the Legislature of Alabama had conferred on the state board of health the power to make such a contract with Dr. Baker, as is alleged in the pleadings here. But that board cannot make a contract in excess of the authority conferred on it by express provision or proper implication. The authority is embraced in section 1053, Code, as amended by Act 1927, pp. 39, 40. It is that the state board shall elect an executive officer, and fix his term of office and salary not exceeding $7,500 per annum. In addition to merely doing that, it made a definite contract with him for the duration of the term and at the amount of the salary which it had fixed. The Legislature did not authorize the execution of a contract unless it is implied in the authority to fix the term and salary and elect the officer. Such is not the usual meaning of that authority. The Legislature could have fixed the term and salary and elected the officer. If it had done so, and no more, there would have been no contract. Therefore, if it authorized the state board to do that, and gave it no further authority in that connection, that did not justify the contract which the board is alleged to have made with Dr. Baker.

I concur in the opinion of Justice BOULDIN to the extent that it so holds. I do not think it necessary to enlarge upon the subject as he has done.

KNIGHT, Justice (dissenting).

The proceeding in this cause originated in a petition for writ of mandamus to require the appellant, as comptroller of the state of Alabama, to draw his warrant directing the treasurer of the state of Alabama to pay to petitioner the sum of $2,187.50, out of moneys in the treasury of the state, and which sum the petitioner claimed was due him as compensation for his services as state health officer for the months of May, June, July, August, and September, 1933.

The appellee alleges in his petition that the state board of health, on April 2, 1930, pursuant to valid statutory authority, entered into a contract with him that he should serve as state health officer for a period of five years, at an agreed salary of $7,500 per annum, in consideration of "his agreeing to faithfully perform the duties of that position, as said duties were prescribed by the State Board of Health, pursuant to the authority vested in them by the legislature"; that appellee has faithfully performed those duties and is still doing so.

It is further averred "that on October 29, 1932, the State Board of Health, acting by and through the State Committee of Public Health, according to law in such cases made and provided, recognizing the strained economic circumstances of the State of Alabama, did, with petitioner's consent and agreement, reduce the compensation of petitioner, as State Health Officer, from the sum of to-wit, $7,500.00 per annum, to the sum of $5,250.00, or $437.50 per month, and petitioner avers he accepted said reduction, and in consideration of the payment of said sum of to-wit, $5,250.00 per annum, or $437.50, did agree to continue to faithfully perform and discharge the duties of State Health Officer; and petitioner avers that he has so continued to faithfully perform and discharge his duties as State Health Officer, and is continuing to do so."

It is also averred that, though properly requested to do so, the appellant has failed and refused to draw his warrant in appellee's favor for the amounts due him as compensation for the months above stated.

These proceedings, as above stated, have been instituted for the purpose of requiring the state comptroller to draw his warrant, in favor of appellee, upon the treasurer, in payment of his said services.

The appellant, comptroller, being of the opinion that appellee, under the law, was not entitled to be paid for his said services at the rate of $5,250 per annum, or $437.50, but at the rate of $3,600 per annum, or $300 per month, interposed a number of grounds of demurrer to the petition. The principal ground of demurrer is that the appellee is state health officer of the state of Alabama, and that the Legislature had fixed his salary at $300 per month, and that said amount is the legal salary due appellee, and not the sum of $437.50 as fixed by the state board of health.

In addition to demurrers filed, the appellant filed an answer, admitting that he was,

and still is, comptroller, and that appellee is the state health officer.

In his answer, the appellant brings forward, in justification of his action, the Act of April 14, 1933 (Gen. Acts 1933 [Ex. Sess.] p. 124), which fixed the salary of appellee, as such state health officer, at $300 per month, and averred that this act became effective as to the salary of appellee for the month of May, 1933, and succeeding months.

To the answer of appellant, comptroller, the petitioner demurred, assigning a number of grounds, some general and some special. Among the special grounds may be stated, in a shorthand way, the following: (4) That as to petitioner the Act of April 14, 1933, known as the Harrison Substitute for the Lapsley-Lusk Bill, is unconstitutional and void; (5) said act is unconstitutional and void as to this petitioner because it impairs the obligation of petitioner's contract with the state board of health; (8) said act is unconstitutional and void as to this petitioner because it violates section 22 of the Constitution of Alabama; (9) said act is unconstitutional and void as to this petitioner because it violates section 95 of the Constitution of Alabama; (10) said act is unconstitutional and void as to this petitioner because it violates section 10 of article 1 of the Constitution of the United States; also as to petitioner it violates section 281 of the state Constitution.

The lower court overruled the appellant's demurrer to the petition, and sustained the demurrer of appellee to the appellant's answer.

Thereupon, after hearing the evidence, the court directed peremptory writ of mandamus to issue, directing the comptroller to draw his warrant upon the state treasurer, for the amount as prayed in the petition. From this judgment the said Hard, as such comptroller, prosecutes this appeal.

The contention of appellee is that he had a valid contract with the state board of health, made by the board pursuant to an express statutory authorization, which contract, by its terms, was for a fixed period of time, not yet expired, and at a fixed compensation; that he was not a public officer of the state, and therefore not within the rule or principle of law which authorized the Legislature to either abolish the office, and thereby to terminate his employment, nor within the class as to whom the Legislature might, at will, reduce their salaries. In short, that appellee was a contractee, not a public officer of the state, and that his contract could not be impaired by subsequent legislative action.

The contention of appellant is that the appellee was a public officer of the state, not protected as to a fixed salary by any constitutional provision, and that the act of the Legislature of Alabama, approved April 14, 1933, reducing appellee's salary, was a valid exercise of legislative authority. In short, that appellee was a public officer, and not protected by the constitutional prohibition of passing laws impairing the obligation of contracts.

We may in the outset say that the appellee makes no contention that the act of 1933, providing for a reduction of salaries, will not become operative upon the office of state health officer at the expiration of the term of the present incumbent, nor is the act's general constitutionality or the constitutionality of its enactment challenged.

We deem it proper to here set out the pertinent sections of the Code bearing upon the question now before us for decision:

Section 1046 of the Code provides: "State board of health; state committee of public health; how constituted.—The medical association of the State of Alabama, as constituted under the laws now in force, or which hereafter may be in force, is the state board of health."

Section 1047 of the Code provides: "The state board of censors, of said association, as said board of censors is or hereafter may be constituted under the laws now in force or which hereafter may be in force and under the constitution of said association, as said constitution now exists or may hereafter exist, is, and when acting as such, shall be known as the state committee of public health; and the governor shall be a member and ex-officio chairman of said state committee of public health."

Section 1048 provides: "When the state board of health is not in session said state committee of public health shall act for said board and have and discharge all the prerogatives and duties of said board, including the adoption and promulgation of rules and regulations provided for in this chapter. When said committee is not in session the state health officer shall act for said board and said committee and shall report to the said board and said committee at its regular meeting his actions, and said board or said committee may at any time revoke any action of said health officer."

Section 1053, as amended by the Legislature of 1927 (Acts 1927, pp. 39, 40), reads: "The State Board of Health shall elect an executive officer to be known as the State Health Officer, and *shall fix his term of office and salary*, pro-

vided that the latter shall not exceed seven thousand five hundred dollars per annum. The State Health Officer so elected shall, under the direction of the State Board of Health, exercise general supervision over county boards of health and county and municipal health officers, and shall promptly report to said county boards of health any delinquencies of official duty on the part of said county and municipal health officers, which may come to his knowledge; shall keep himself informed in regard to all infectious, contagious, and pestilential diseases, which may be in danger of invading the State, and shall, so far as authorized by law, take prompt measures to prevent such invasion; shall keep the Governor, informed as to the health conditions prevailing in the State, especially as to outbreaks of any of the diseases enumerated in Section 1092 of this Code, and shall submit to the Governor such recommendations as he deems proper to control such outbreaks."

It will be noted that, with the exception as to the amount of maximum salary that the state board of health is authorized to pay the state health officer, section 1053, as amended, is substantially the same as the progenitor section 704 of the Code, 1907.

We may well concede that ordinarily a public officer, strictly as such, does not occupy the relation of a contractee of the state. This proposition seems to have been definitely settled in this state as well as elsewhere. State v. Sanders, 187 Ala. 79, 65 So. 378, 379, L. R. A. 1915A, 295; Harrington v. State, 200 Ala. 480, 76 So. 422; Michael v. State, 163 Ala. 425, 50 So. 929; Ex parte Lambert, 52 Ala. 79; Perkins, Treas. v. Corbin, Judge, etc., 45 Ala. 103, 6 Am. Rep. 698; 12 C. J. 1017, § 643; White, Auditor v. State ex rel. Denson, 123 Ala. 577, 26 So. 343.

In the case of United States v. Hartwell, 6 Wall. 385, 393, 18 L. Ed. 830, the Supreme Court of the United States gave the following definition of a public office:

"An office is a public station, or employment, conferred by the appointment of government. The term embraces the ideas of tenure, duration, emolument, and duties. * *, *

"A government office is different from a government contract. The latter from its nature is necessarily limited in its duration and specific in its objects. The terms agreed upon define the rights and obligations of both parties, and neither may depart from them without the assent of the other."

In the case of United States v. Maurice, 2 Brock. 96, Fed. Cas. No. 15,747, Chief Justice Marshall observed: "Although an office is 'an employment,' it does not follow that every employment is an office. A man may certainly be employed under a contract, express or implied, to * * * perform a service, without becoming an officer."

In 46 C. J. 928, § 20, it is stated: "An important characteristic which ordinarily distinguishes an office from an employment or contract lies in the fact that the creation of an office involves a delegation to the person filling the office of *some part of the sovereign power. or function of government to be exercised by him for the benefit of the public.* But a public officer is none the less a public officer because his authority is confined to narrow limits, since it is the duty, and the nature of that duty, which makes him a public officer, and not the extent of the authority." (Italics supplied.)

The foregoing statement from Corpus Juris is supported by the decision of our own court. In the case of Montgomery v. State ex rel. Enslen, 107 Ala. 372, 18 So. 157, 159, this court, in an opinion by Coleman, Justice, quoted with approval the following from the Advisory Opinion of the Justices in 3 Me. (3 Greenl.) 481, 482: "We apprehend that the term 'office' implies a delegation of a portion of the sovereign power, and the possession of it by the person filling the office; and the exercise of such power, within legal limits, constitutes the correct discharge of the duties of such office. The power thus delegated and possessed may be a portion belonging sometimes to one of the three great departments, and sometimes to another. Still, it is a legal power, which may be rightfully exercised, and, in its effects, will bind the rights of others, and be subject to revision and correction only according to the standing laws of the state. An employment, merely, has none of these distinguishing features. A public agent acts only on behalf of his principal, the public, whose sanction is generally considered necessary to give the act performed the authority and power of a public act or law. And, if the act be such as not to require such subsequent sanction, still it is only a species of service performed under public authority, but not in execution of any standing laws. * * * It appears, then, that every 'office,' in the constitutional meaning of the term, implies an authority to exercise some portion of the sovereign power, either in making, administering, or executing the laws."

In the case of State v. Sanders, supra, this court had occasion to consider section 704, the progenitor of section 1053, and to define

528

and 'declare the legal status of Dr. Sanders, the then health officer of the state. What was there said of the status of Dr. Sanders, under his appointment or election by the state board of health, is here in point. Mr. Justice Mayfield, speaking for the court, observed: "Nearly all statutes which, like the ones in question, create public boards or commissions for the management and control of the various departments of government expressly provide for the election or appointment of officers, agents, employees, and servants. The mere fact that these appointees are called *officers* rather than employees, or that the statute says they shall be *elected* rather than appointed or hired, does not make such persons so appointed or elected *officers*, within the meaning of section 281 of the Constitution. It is true that they may be officers, but they are officers of the board or commission which appoints or elects them, and not of the public, the state, the county, the municipality, within section 281. It is in this sense, we think, that the statute in question speaks of appellee as the 'state health officer.' He is made the officer of the board which elects him, and which is by law charged with the duty of executing and administering the laws of the state pertaining to the health and quarantine department of the state government. He is not an officer of the state, county, or municipality, within the meaning of section 281 of the Constitution. No part of the sovereign power of the state is by the statute delegated to appellee, although he is named in the statute as the 'state health officer.' The delegation of such authority and power is to the 'state board of health,' which is appellee's creator and master, whom he serves. He does not serve the state; he serves the board which elects him. That statute expressly provides that whatever he does he shall do 'under the direction of the state board of health.'"

It must be borne in mind also that, since this court made the pronouncement in the Sanders Case, the Legislature has readopted the statute evincing the clear intent to adopt this court's construction of said act. Our previous construction has therefore become a part of the statute itself. So. Ry. Co. v. Moore, 128 Ala. 434, 29 So. 659.

It would appear from the foregoing that this court has held that the state health officer is not an officer of the state, within the meaning of section 281 of the Constitution; that is to say that he does not hold any civil office under the state government; that he is an officer of the board which elected him, and serves the board, "his creator and master."

Then, is he in fact, as insisted by appellee, a contractee of the board of health, appointed pursuant to legislative authority?

The Legislature, by the adoption of section 1053 of the Code, expressly conferred the authority upon the state board of health to elect an executive officer to be known as the state health officer, *to fix his term of office* and salary, with only the express limitation that the salary so fixed should not exceed $7,500, and, of course, with the further limitation implied that the term of service should be for a reasonable length of time.

Pursuant to the above authority, appellee was elected by the state board of health for a period of five years from April 2, 1930, a term not yet expired, and at an agreed and fixed salary (originally) of $7,500 per annum, but later, owing to depressed financial conditions then existing, reduced by mutual consent on the part of the board of health and appellee to $5,250. The appellee accepted the appointment, and agreed to perform the service required of him, for the stipulated salary. Did this make the appellee a contractee of the board of health, acting under due authority of law? We think it did.

In 59 C. J. p. 170, § 284, the principle is broadly stated "that the State has in general the same power to contract as a corporation or an individual. Thus a state may contract with an individual or with another state by an act of the legislature."

Of course, the power to contract may be limited by provisions of the organic law, and contracts in contravention of constitutionally imposed limitations would be void. Nor can the state by contract "divest itself of the essential attributes of sovereignty," but within constitutional bounds the state, through legislative action, or authorization, has the same power to contract as an individual. And contracts of the state made under statutory authority binds the state, notwithstanding the subsequent repeal of the statute authorizing the contract. 59 C. J. p. 170, § 285.

The Legislature has exclusive power to contract for the state, but may, and often does, exercise that power by duly constituted agents. When such agents make contracts, with full legislative authority, they are as binding as though by the Legislature. Van. Dyke v. State, 24 Ala. 81; 59 C. J. 170, §§ 284 and 285.

In the case of People ex rel. Graves v. Sohmer, 207 N. Y. 450, 101 N. E. 164, 166, it is said: "No one doubts the right or the capacity of the state to contract."

In Danolds v. State of New York, 89 N. Y. 36, 42 Am. Rep. 277, Judge Earl, writing for the court, said: "The sovereign can contract and has very many occasions to do so; it can build canals and public buildings, and engage in public works, and in carrying forward its projects it makes use of the instrumentalities which individuals use for the same purposes. It must be governed by the same rules of common honesty and justice which bind individuals."

And in the case of People v. Stephens, 71 N. Y. 549, it was observed by the eminent judge who spoke for the court: "There is not one law for the sovereign and another for the subject; but, when the sovereign engages in business and the conduct of business enterprises, and contracts with individuals, * * * whenever the contract, in any form, comes before the courts, the rights and obligations of the contracting parties must be adjusted upon the same principles as if both contracting parties were private persons. Both stand upon equality before the law, and the sovereign is merged in the dealer, contractor and suitor."

The state, acting by and through the Legislature, may enter into the pursuit of any governmental function or business enterprise, not prohibited by the Constitution. In the pursuit of that project, it may, by legislation, set up such form of agency or commission as it may see fit, and delegate to it the power to contract, and fix the limits in which such power may be exercised. When this is done, contracts made by such authority are the inviolable contracts of the state. If the state sees fit, also by legislation, thereafter, as it may, to cease to pursue such function, cut it off either suddenly or gradually, all in its discretion, such determination and action can no more render null the contracts so made than it could annul any other contract legally entered into, to the extent that they were performed before the end came.

When an office is simply created by law, a term is fixed, a salary prescribed, and one is elected to that office, he takes it subject to the right, known to exist, to abrogate the office at any time and to change the salary and term, and no contract is thereby violated. 46 C. J. 928. Such officer, in a proper case, can only seek refuge under section 281 of the Constitution. But, when the state, by due legislation, undertakes a project within its powers, and, in the pursuit of it, contracts are made, within legislative grant and limits, either for labor, material, or management, the fact that the Legislature has the power to end the pursuit of that project, that power

is not the reservation of a right to annul such contracts for labor, material, and management furnished before the project is ended, and which were used, or are useful for that purpose. The right to terminate a project does not carry with it the right to terminate or modify contracts legally made for its operation while it is still in progress. If that were not so, a contract in the progress of any such progress would have no stability, and section 22 of our state Constitution would not apply to the state. A contract executed, as well as one which is executory, contains obligations binding on the parties.

Section 22 of our Constitution does not simply inhibit the state from impairing the obligation of contracts between two individuals, but, with like force and effect, the provision applies to contracts made by the state. Fletcher v. Peck, 6 Cranch, 87–137, 3 L. Ed. 162.

If we concede that the reserve right to end a project reserves the right to end at the same time all contracts made in its pursuit to the extent they have not been performed by the contractee, it does not follow that the state cannot bind itself by a contract which, within reasonable limits, will be inviolable and continuous pursuant to its terms, as long as such project is pursued.

This situation is altogether different from the salary of an ordinary officer not protected by the Constitution, nor by contract. The salary of such an officer may be changed at the will of the Legislature, and that right reserved by the sovereign, is known to the officer when he enters into it.

The Legislature of Alabama has undertaken a governmental function of aiding its citizens to have good health. That function is not commanded by the Constitution, but is a power to be exercised at the will of the Legislature. It has set up a board and delegated the power to that board to contract within certain limits. While the Legislature may abandon that project when it sees fit, and contracts to the extent then unfulfilled may thereby cease and terminate, notwithstanding their terms otherwise, the Legislature has not so abandoned that project, nor expressed a determination to do so. That board is now in the exercise of the powers conferred, making contracts, having them performed, receiving the services of its employees.

The pleadings show that appellee made a contract with the board for a designated term, which seems to be reasonable, and at a salary then authorized by law, to perform

certain prescribed duties. To be sure, he is in a sense an officer, but not such as is mentioned or protected by section 281 of the Constitution. His status is an officer of the board which he serves. State v. Sanders, supra.

The state health officer performs duties for the benefit of the public. The state would have no authority to engage the services of any person and pay him therefor except for the benefit of the public.

The pleadings show that both parties mutually bound themselves for a definite term, and for a stipulated salary to do and perform certain well-defined duties. Those duties are being performed by Dr. Baker to the satisfaction of the other party; that is, the state. The governmental function in which Dr. Baker's services are used is still in full operation.

But it may be argued that the state health officer may resign, and therefore it is not binding on him. But the pleadings show an employment such as that he can no more resign without the consent of the board than any other employee who has a definite contract may resign without the consent of his employer.

The case of Hall v. Wisconsin, 103 U. S. 5, 6, 26 L. Ed. 302, bears some analogy to the case now before us. In the Hall Case, the Legislature of the state of Wisconsin undertook to have a geological, mineralogical, and agricultural survey made of the state, and to that end, on March 3, 1857, adopted an act providing for such a survey by commissioners, and the Governor of the state was authorized to appoint the commissioners, and was required to make a contract with each of the commissioners for the performance of his allotted work. To carry out the work the sum of $6,000 per annum for six years was appropriated, "to be paid to the persons entitled to receive the same." By a subsequent act of March 21, 1862, the act of March 3, 1857, as well as another act touching the same subject, was repealed.

On the 29th day of May, 1858, Hall entered into a contract with the Governor, whereby it was stipulated on his part that he should perform the duties therein mentioned touching the survey, and the agreement further stipulated *"this contract to continue until the 3rd day of March, 1863, unless the said Hall should be removed for incompetency or neglect of duty * * * or unless a vacancy shall occur in his office by his own act or default."* Hall's compensation was fixed at $2,000 per annum.

Hall continued to perform his duties under the contract, after the act under which he was appointed had been repealed. He demanded payment of the state for his services for the year ending March 3, 1863, but payment was refused. Thereupon Hall brought suit in a court of Wisconsin to recover for his services. Failing in the suit in the courts of Wisconsin, he carried his case to the Supreme Court of the United States by writ of error to the Supreme Court of Wisconsin.

The state of Wisconsin insisted that the employment of Hall was an office, and that the Legislature had therefore the right to abolish it at pleasure, which it had done by the repeal of the act authorizing the survey and appointment of Hall. Hall maintained that there was a contract between himself and the state of Wisconsin, and that the repealing act impaired its obligation in violation of the contract clause of the Constitution of the United States.

The Supreme Court of the United States sustained the contention of Hall, and reversed the judgment of the Supreme Court of Wisconsin. 39 Wis. 79.

In reversing the Supreme Court of Wisconsin, the Supreme Court of the United States, speaking through Mr. Justice Swayne, used the following pertinent and forceful language: "When a State descends from the plane of its sovereignty, and contracts with private persons, it is regarded pro hac vice as a private person itself, and is bound accordingly. Davis v. Gray, 16 Wall. 203 [21 L. Ed. 447]."

In the case of State v. Cobb, 64 Ala. 127, Chief Justice Brickell, the great jurist whose utterances, while a judge of this court, have always commanded the respect of the profession, and who, though dead, yet lives in his many landmark opinions, has this to say of the contracts of the state:

"The State has capacity to enter into contracts, incurring liability absolute or contingent, as a principal debtor or as indorser, guarantor, or surety, when appropriate to the just exercise of its powers, save so far as capacity may be restrained by constitutional limitation. When it enters into contracts, while it obtains all the rights, it incurs all the responsibilities of individuals, who are parties to like contracts.—United States v. Bank of Metropolis, 15 Pet. 377, 10 L. Ed. 774. Its contracts are of the same obligation, of the same incidents, measured and governed by the same principles of law, as are the contracts of individuals. * * *

"The State could not, as the individual debtor could not, by any act of its own, by any expression of the legislative will, by any agency it could employ, lessen, or change, or impair, or destroy the obligation of contracts into which it had entered.—Fletcher v. Peck, 6 Cranch, 87, 3 L. Ed. 162."

Can it be said that the great judge, whose legal vision was always clear and unobscured, whose independence in opinion and decision was one of the recognized qualities of his mind, and whose profound learning enabled him to grasp legal principles as has been given but few men, blundered in his reasoning and conclusion in State v. Cobb, supra. The writer is not so impressed. He prefers to be guided by the ancient landmarks rather than to follow the one attempted to be established in this case.

Appellant in this case contends that Dr. Baker was an officer of the state, but not within the saving clause of section 281 of the Constitution, and relies largely in support of his contention upon our holding in the Sanders Case, supra; that under section 2697 of the Code his office could, be vacated by an act of the Legislature abridging his term of office, inasmuch as the same had not been fixed by the Constitution. The answer to this contention is, the office has not become vacant by any legislative act abridging the term. The office, if such, still continues; the term has not been abridged.

The appellant also urges, as additional reasons for holding that appellee is an officer of the state, that his compensation is paid by the state out of the tax money of the people, but we here interpolate, by way. of answer, so was the salary of the janitor of the state capitol at one time; that Dr. Baker's salary must be provided by an appropriation by the Legislature of Alabama, and we may answer, so must the salary or compensation of a truck driver employed by the state to haul sand and gravel for keeping up our highways; that the state health officer's salary must be paid upon warrant drawn by the comptroller of the state of Alabama, and must be paid by the treasurer of the state, and we may answer, so must bills incurred by the state, in supplying needed stationery for the various officers of the state, be paid.

No one, we take it, would argue that a janitor at the capitol is an officer of the state; no one would argue that the truck driver was an officer of the state; and no one would, argue that the stationer, who furnishes stationery for the state, was an officer of the state.

It is also insisted, inferentially, that to hold the state could not reduce the salary agreed to be paid by the board to Dr. Baker out of the tax money of the state would, in effect, place the *creature* above the *creator*. This argument will not stand the acid test of cold logic. While the argument is plausible and ingenious, it is not satisfying. It is not, we insist, with all possible emphasis, a question of placing the creature above and beyond the reach of the creator, but it involves the fundamental and constitutional question, Can a contract, though one of the high contracting parties be the sovereign, be impaired at the will of either? It occurs to us that the Constitutions, state and federal, alike forbid such action.

In construing and passing upon the validity of contracts, there is not one rule or law for the sovereign and another for the citizen.

So far as the contract obligation and the duties thereunder are concerned, sovereign and citizen stand upon equality, under the Constitution. The state is not above, or superior to, its valid agreements.

When the state enters into contractual obligations with private individuals, considerations of need, real or fancied, cannot dissolve or sterilize those obligations, at the instance of the state—no more so than could an individual, who had contracted with the state to construct a bridge at a given point over the Alabama river, legally abrogate his contract because of financial depression. The same law which concludes the individual concludes the state.

If the conclusion of my brothers, who have concurred in the opinion of Mr. Justice BOULDIN, is sound, then it would seem to the writer that, to be consistent, they should go further and hold that Dr. Baker held an office with fixed term and a fixed salary, which was protected from diminution by section 281, of the Constitution, until the ratification of the Sparks' Amendment.

Certainly it would seem that, if the board, by express authorization of the Legislature, had fixed his term and salary, and the position he held was an office under the state government, the act of the board, in so fixing the term and salary, would be the same as if the Legislature, in the first instance, had fixed that term and salary. The principle of "qui facit per alium, facit per se" would apply.

532

And, so holding, it would seem that, at all events, Dr. Baker would be entitled to his undiminished salary for the months of May, June, July, and August, 1933.

There is nothing in the case of State Docks Commission v. State of Alabama, ex rel. Cummings (Ala. Sup.) 150 So. 345, which conflicts with the holding in this case.

In the Cummings Case, supra, there was no authority conferred upon the state docks commission to fix the term of service.

The writer is at the conclusion the appellee's contract is beyond legislative abrogation, is binding upon the state, and that the trial court was correct in so holding; and that the decree appealed from should be affirmed.

THOMAS, J., concurs.