MURDOCK, Justice.
The Fraternal Order of Police, Lodge No. 64, and three employees of the Jefferson County Sheriffs Office — Sgt. Robert Thompson, Lt. W.D. McAnally, and Capt. Aubrey Leon Finley (hereinafter “the employees”) — appeal from the summary judgment in favor of Jefferson County (“the County”), the Personnel Board of Jefferson County (“the Personnel Board”), and Jefferson County Sheriff Mike Hale (“the sheriff’)[1] in the employees’ action regarding the suspension of merit pay raises for classified employees of the Jefferson County Sheriffs Office. We affirm the judgment of the circuit court.

I. Facts and Procedural History

In the circuit court, the parties stipulated that certain facts were undisputed and that this case could be decided as a matter of law. A memorandum opinion issued by the circuit court in conjunction with the entry of its judgment states:
“1. In 1935, the Alabama Legislature passed Act 1935-284, which created a unified civil service system for employees of Jefferson County, the City of Birmingham, and many of the County’s municipalities. (See Act 1935-284, 1935 Acts of Alabama at p. 691.) This Act was revised and re-enacted in 1945, and subsequently has been amended from time to time. (See Act 1945-248, 1945 Acts of Alabama at p. 376.) This Act is commonly known as the ‘Enabling Act.’ [2]
*20 “2. The Jefferson County Personnel Board is the body created by the Enabling Act to implement the merit system. (Id.)
“3. The Personnel Board is authorized to establish Rules and Regulations to implement the provisions of the Enabling Act. Such Rules and Regulations, when so promulgated, ‘shall have the force and effect of law unless they are contrary to the provisions of [the Enabling Act].’ (See Enabling Act, § 12.)
“4. Two of the individual plaintiffs (W.D. McAnally and Aubrey Leon Finley) are regular classified employees of the Jefferson County Sheriffs Office, are subject to the Enabling Act, are otherwise eligible for step increases, and but for the Sheriffs decision to withhold step increases for his employees, would receive step increases. The third individual plaintiff, Robert Thompson, is compensated at Step 10 of the applicable pay grade and therefore could not receive a step increase in any event.[3]
“5. On April 27, 2010, Hon. Ray Fitzpatrick, an attorney representing the Jefferson County Fraternal Order of Police, Lodge No. 64, sent a letter to Lor-ren O. Oliver, [Personnel Board] Director of Personnel, arguing that merit pay increases are mandatory each year pursuant to various provisions of the Enabling Act and the [Personnel Board] Rules and Regulations, conditioned only on the employee’s satisfactory job performance. In short, Mr. Fitzpatrick argued that [Personnel Board] Rule 8.2(c) and Section 12 of the Enabling Act provide that a satisfactory performance rating is the sole and exclusive factor that may be considered by an Appointing Authority[4] in exercising its discretion to award or withhold merit increases. Mr. Fitzpatrick requested that the Director ‘take such actions as are required to ensure that implementation of all merit increases which have become due in the period since July 14, 2009 with the provision of appropriate backpay.’ (See Affidavit of Lorren Oliver, Ex. 1.)
*21 “6. On May 11, 2010, the Director issued a written letter determination. The Director concluded that ‘Section 12 of the Enabling Act does not make merit step increases mandatory’ and that ‘Section 12 ... does [not] provide that an Appointing Authority may not consider its own fiscal circumstances and conditions in determining whether to exercise its discretion afforded under Rule 8.2(c).’
“7. By letter of May 18, 2010, Mr. Fitzpatrick requested that this matter be placed on the agenda for consideration by the full Board.
“8. At its regularly scheduled. June 8, 2010, business meeting, the three-member Personnel Board received oral argument from Mr. Fitzpatrick, representing the Jefferson County Fraternal Order of Police, Lodge No. 64, and from Hon. Rob Riley and Jay Murrill, representing the Sheriff. The Board upheld the Director’s May 11 determination.
“9. The Jefferson County Sheriffs Department is not the only employer subject to the Enabling Act that has suspended merit step increases. The Personnel Board itself has suspended such increases for its own employees for the past two fiscal years....

“Stipulated Facts

“On December 1, 2010, the plaintiffs and Defendant Personnel Board entered into a stipulation of facts.... [T]he following stipulated facts are deemed to be undisputed ...:
“ ‘The three-member Personnel Board has adopted Rule 8.2(c) governing the provision of merit raises for classified employees....
“ ‘The Board’s Director has authorized other guidance documents published by the [Personnel Board] and has directed staff to apply procedures for the administration of merit raises as explained in this paragraph. Those procedures have not been specifically approved by the three-member Board. The procedures that are applied by the Director and staff generally work as follows. Each Regular Classified Employee has his or her own ‘anniversary date’ on which step increases may be given. A Regular Classified Employee may not receive more than one step increase in a year. If the Appointing Authority is granting step increases for the year, and if the employee otherwise qualifies for a step increase (e.g., is not already at the maximum step for the applicable pay grade, and has a qualifying performance evaluation), then the step increase is implemented by the Appointing Authority initiating a Personnel Action in the Lawson System. The Personnel Action for a step increase is entered on Lawson screen PA-52.1. When the Personnel Action is initiated, the Lawson System logic automatically routes the action for necessary approvals and validations. When this is complete, the employee’s step and corresponding rate of compensation are increased. The employee’s anniversary date remains unchanged. In the case of the Sheriffs Office, the step increase personnel actions are initiated by the Sheriffs Office to the Jefferson County Human Resources Department, which then transmits the actions via interface file to the Personnel Board. If the Appointing Authority does not initiate a step increase for an employee into the system, the employee does not receive it.
“ ‘The [Personnel Board] Rules and Regulations were revised during the tenure of Dr. Ronald R. Sims, appointed as Receiver by orders entered in United States v. Jefferson County, No. CV-75-666 (N.D. Ala.). The Re *22 ceiver was given broad authority over the Personnel Board, including the powers of the Director as provided for in the Enabling Act. The Receiver was not given authority to take any action contrary to the requirements of the Enabling Act. Through a series of orders, the federal court has since restored authority to the three member Board and its Director.
“ ‘During the Receivership, the Rules and Regulations were revised in January 2003, May 2003, and April 2005. After the Receivership, portions of the Rules were amended by the three-member Board in January 2009. The current version of Rule 8.2(c) is derived from the former Rule 2.13(d).... The language, ‘[a]t the discretion of the Appointing Authority,’ appears twice in Rule 8.3(c) [sic ]. The first instance was added with the April 2005 Rule revision, while the second instance was added in the January 2009 Rule revision; both instances remain a part of the Rule.
“ ‘In 2007, the [Personnel Board] Director published guidance documents that provide that Appointing Authorities have discretion to grant or suspend merit step increases on an across-the-board basis. Such guidance documents have not been approved by the Board as part of the Rules and Regulations.
“ ‘The Director of Personnel is not aware of any instance from the fall of 2002 through July 2009, in which any Appointing Authority suspended merit step increases on an across the board basis.
“‘As Rule 8.2(c) is applied by the Board, each employee has his or her own ‘anniversary date’ on which a step increase may be given. After an across-the-board suspension is ended, the next step increase shall be granted on the same anniversary date for the employee if the employee’s performance is satisfactory.
“ ‘The [Personnel Board] has not identified any criteria governing the conditions in which a jurisdiction may elect to suspend, halt, stop or freeze merit or step increases across the board. The Board contends that Rule 8.2(c) places that discretion in the hands of the Appointing Authority.
“ ‘The [Personnel Board] has not identified any criteria governing procedures that a jurisdiction must adhere to after an ‘across the board’ suspension of merit raises is ended. However, the [Personnel Board] Director of Personnel believes that a suspension of merit increases should stand in place for one full year. When step increases are reinstated, the [Personnel Board] Director of Personnel would not permit two steps to be given at once, but a jurisdiction could authorize an across-the-board increase in the entire salary schedule under provisions of the law and Rules governing changes in the salary schedule.
“ ‘The [Personnel Board] has not identified any financial criteria governing the conditions in which a jurisdiction may suspend merit raises. The Board contends that Rule 8.2(c) places that discretion in the hands of the Appointing Authority.’ ”
(Footnote omitted.)
In addition to the foregoing undisputed facts, we note that before the receiver appointed by the federal court in United States v. Jefferson County, No. CV-75-666 (N.D. Ala.), adopted the revision to the Personnel Board Rules and Regulations in 2005, i.e., sometime in 2004, counsel for the receiver circulated a memorandum sum *23 marizing the rule changes. With respect to the revision of Rule 8.2(c), which added the language “at the discretion of the Appointing Authority,” the memorandum stated:
“Rule 8.2(c) —Salary Advancement— This Rule was rewritten to clarify that an Appointing Authority may, in its discretion, provide part-time employees with salary advancement. The Rule was also rewritten to emphasize that an efficiency review will be required for all salary advancements. This requirement ensures that salary advancements are based on meritorious performance.”
We also note that a document referred to by the parties as a “guidance document” was published in September 2007 by the personnel director in order to provide an overview of civil-service employment in Jefferson County. This document stated the following concerning merit raises:
“A regular classified employee is eligible to receive a one step ‘merit’ increase in pay on his or her anniversary date. Such increases may be denied to an employee based on documented performance problems or a jurisdiction may choose not to grant step increases across the board if such raises are not financially feasible. In the normal course of business, employees may neither be paid below Step 1 nor beyond the top step assigned to their grade. Additionally, there is no provision in the Merit System for off-cycle salary adjustments except those associated with promotions or demotions.”
(Emphasis added.) All versions of the guidance document published after September 2007 included this explanation.
On June 30, 2010, the employees filed the instant action against the defendants contending that they were being denied their full compensation as merit-system employees as a result of the suspension of merit pay raises by the sheriff. The employees argued that the suspension of merit pay raises violated § 12 of Act No. 248, Ala. Acts 1945 (“the enabling act”); they sought declaratory and injunctive relief, a writ of mandamus requiring the implementation of merit pay raises, and backpay and compensation for lost salary.
On September 1, 2010, the Personnel Board filed a motion for a summary judgment, which the sheriff and the County joined and adopted. On December 1, 2010, the employees filed a response to the defendants’ motion, as well as a cross-motion for a partial summary judgment. As noted above, the parties stipulated to the pertinent facts.
On December 10, 2010, the circuit court entered a judgment in which it granted the defendants’ motion for a summary judgment as to all claims and denied the employees’ cross-motion for a partial summary judgment. The employees appeal.

II. Standard of Review

“Our standard of review is straightforward when, as here, the facts are undisputed:
“ ‘An order granting or denying a summary judgment is reviewed de novo, applying the same standard as the trial court applied. American Gen. Life & Accident Ins. Co. v. Underwood, 886 So.2d 807, 811 (Ala. 2004). In addition, “[tjhis court reviews de novo a trial court’s interpretation of a statute, because only a question of law is presented.” Scott Bridge Co. v. Wright, 883 So.2d 1221, 1223 (Ala.2003). Where, as here, the facts of a case are essentially undisputed, this Court must determine whether the trial court misapplied the law to the undisputed facts, applying a de novo standard of review. Carter v. City of Haleyville, 669 So.2d 812, 815 *24 (Ala.1995). Here, in reviewing the [entry] of a summary judgment when the facts are undisputed, we review de novo the trial court’s interpretation of statutory language and our previous caselaw on a controlling question of law.’ ”
McKinney v. Nationwide Mut. Fire Ins. Co., 33 So.3d 1203, 1206-07 (Ala.2009) (quoting Continental Nat’l Indem. Co. v. Fields, 926 So.2d 1033, 1034-35 (Ala.2005)).

III. Analysis

The employees make two arguments on appeal. First, they argue, albeit briefly, that Personnel Board Rule 8.2(c) does not authorize an appointing authority such as the sheriff to suspend merit pay raises for employees of the appointing authority. In pertinent part, Personnel Board Rule 8.2 provides:
“Each Classified Employee shall be paid at one of the Pay Grades set forth in the Pay Plan for the position in which he or she serves, in accordance with these Rules and the special provisions for administering the Pay Plan.
[[Image here]]
“e. Salary Advancement. Annual salary advancement within established Pay Grades shall be based on meritorious performance on the job and shall be in accordance with the special provisions for administering the Pay Plan. An efficiency review reflecting satisfactory performance shall be required for advancement. At the discretion of the Appointing Authority, a Classified Employee with continued satisfactory service shall be eligible for future one-step annual increases until such time as the Classified Employee reaches the maximum Pay Step for the Pay Grade.
“At the discretion of an Appointing Authority, an employee with one or more below standard ratings on his or her efficiency rating may be denied a Pay Step increase until such time the employee’s performance improves. Such delayed Pay Step increase shall not be retroactive and shall extend the employee’s anniversary date one year from the effective date of the Pay Step increase. Efficiency Ratings are not subject to appeal to the Board.”
(Emphasis added.)
In the circuit court, the Personnel Board and the other defendants contended, and the circuit court agreed, that the above-emphasized language in Rule 8.2(c) gives an appointing authority the discretion to implement an “across-the-board” suspension of merit pay raises to its employees.[5] The employees argued that the language emphasized above merely provides that an appointing authority can assess whether an employee had “satisfactory service” as permitted by § 12 of the enabling act. The employees note that the memorandum circulated by counsel for the receiver in 2004 echoed this interpretation of the language. They insist that the “plain intent” of Rule 8.2(c) does not afford an appointing authority the discretion to discontinue merit raises.
The circuit court rejected this argument, reasoning as follows:
“The Rule does not provide that step advancement is a mandatory consequence of a satisfactory efficiency review; rather, the Rule provides that a satisfactory efficiency review ‘shall be required for advancement ’ i.e., is a necessary prerequisite for receiving a step increase. The Rule further makes it *25 clear that a satisfactory efficiency review makes the employee ‘eligible for,’ not necessarily ‘entitled to,’ a step increase. The phrases ‘eligible for’ and ‘entitled to’ are different, and they mean different things. See, e.g., Immigration And Naturalization Service v. Cardoza-Fonseca, 480 U.S. 421, 444 (1987) (‘We do not consider it at all anomalous that out of the entire class of ‘refugees,’ those who can show a clear probability of persecution are entitled to mandatory suspension of deportation and eligible for discretionary asylum, while those who can only show a well-founded fear of persecution are not entitled to anything, but are eligible for the discretionary relief of asylum.’) (emphasis in original). In addition, the phrase ‘[a]t the discretion of the Appointing Authority1 leaves with the Appointing Authority the ‘discretion’ to decide whether to grant step increases, provided the mandatory precondition of a satisfactory efficiency review is satisfied. Finally, the Board itself has interpreted this Rule to allow the suspension of merit step increases, and the Board’s interpretation of its own Rule is entitled to substantial deference. See Personnel Board of Jefferson County v. Bailey, 475 So.2d 863, 866 (Ala.Civ.App.1985) (‘[Substantial deference should be given to [this] agency’s interpretation of its own rules and regulations.’).”
We agree with the circuit court. “ ‘[Lfenguage used in an administrative regulation should be given its natural, plain, ordinary, and commonly understood meaning, just as language in a statute.’” Ex parte Wilbanks Health Care Servs., Inc., 986 So.2d 422, 427 (Ala.2007) (quoting Alabama Medicaid Agency v. Beverly Enters., 521 So.2d 1329, 1332 (Ala.Civ.App. 1987)). Under a plain reading of Rule 8.2(c), the phrase “[a]t the discretion of the Appointing Authority” introduces everything that succeeds it in the sentence, meaning that an appointing authority has discretion as to whether to provide merit pay raises to its eligible employees. Moreover, as the circuit court noted, “the interpretation of an agency regulation by the promulgating agency carries ‘ “controlling weight unless it is plainly erroneous or inconsistent with the regulation.” ’ ” Brunson Constr. & Envtl. Servs., Inc. v. City of Prichard, 664 So.2d 885, 890 (Ala. 1995) (quoting United States v. Larionoff 431 U.S. 864, 872, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977), quoting in turn Bowles v. Seminole Rock Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945)). The Personnel Board interprets Rule 8.2(c) to give an appointing authority the discretion to suspend merit pay raises across-the-board to its employees, and the personnel director has interpreted the rule in this way since 2007. Thus, we construe Rule 8.2(c) as permitting an appointing authority to suspend merit pay raises for its employees.
The employees’ second and primary argument on appeal, however, is that, to the extent that Rule 8.2(c) permits the suspension of merit pay raises, it conflicts with § 12 of the enabling act. Both sides have observed that the legislature amended portions of the enabling act, including § 12, through two acts, both of which, after approval by the governor became effective at 6:00 p.m. on May 23, 1977: Act No. 680 and Act No. 684, Ala. Acts 1977. The versions of § 12 in these two acts are somewhat different, but the parties agree that the differences do not affect the issue on appeal.[6] The portion of *26 § 12 the employees contend conflicts with Rule 8.2(c) provides as follows in Act No. 680: “The Director] of Personnel shall[:] .... [p]rovide[ ], by proper rules, regulations, and orders for the advancement of salary within each class or grade on the basis of efficiency and length of service.” The same portion of § 12 in Act No. 684 provides as follows:
“The director of personnel[,l subject to the provisions of this subdivision and approval of the personnel board[,] shall: ... Provide, by proper rules, regulations, and orders and special provisions in the pay plan for the advancement of salary within each class or grade on the basis of efficiency and length of service, and for other special conditions and premium rates of pay.”
In a nutshell, the employees’ argument can be summarized as follows:
“The plain language of the statute requires the Personnel Board to implement a system for ‘salary advancement’ through the pay steps within a pay grade.... But, having established a system for salary advancement, the Board is not authorized, by rule or otherwise, to give each Appointing Authority the option of whether to implement the required system for salary advancement in a given fiscal year. The trial court erroneously found that Appointing Authorities have the option of suspending merit raises at will.”
In other words, the employees contend that § 12 requires the Personnel Board and appointing authorities to provide merit pay raises to qualified employees and that the legislature did not give those entities the discretion to halt such raises for any reason. The employees further contend that
“[tjhere is no ambiguity in that language. And there is nothing to suggest that the system for step grade increases may be at the option of each Appointing Authority to accept or reject. There are two criteria for advancement: (1) ‘efficiency’ and (2) ‘length of service.’ While the Personnel Board is given rule making authority to implement those two criteria, it does not have the authority to add to or diminish those requirements by rulemaking or other policy making action. It certainly does not have the authority to give Appointing Authorities the option of whether to comply with the statutory duty to implement a Pay Plan that is constructed with suitable grades and steps within grade.”
For its part, the Personnel Board contends that Rule 8.2(c) constitutes a lawful implementation by it of the stated requirements of § 12 of the enabling act with regard to “the advancement of salary.” It notes that the rule provides for raises within the grades of the pay schedule based on satisfactory performance, i.e., efficiency and length of service. As do the employees, the Personnel Board contends that the plain language of § 12 supports its position:
“[Tjhe Employees simply cannot point to any language in the Enabling Act that entitles them to mandatory step increases as of right, nor step increases of any particular frequency, nor step increases in any particular amount. The Employees’ interpretation of Section 12 implies negative restraints on the Personnel Board’s rulemaking power, and nondis-cretionary duties on the part of Appointing Authorities, that simply cannot be found in the text.”
Both sides are correct that in interpreting a statute we are bound by the plain language of the statute.
*27 “In Ex parte Dorough, 773 So.2d 1001, 1003 (Ala.2000) (citing Ex parte Pfizer, Inc., 746 So.2d 960, 964 (Ala.1999)), this Court stated:
“ ‘ “ ‘When the language of a statute is plain and unambiguous, ... courts must enforce the statute as written by giving the words of the statute their ordinary plain meaning— they must interpret that language to mean exactly what it says and thus give effect to the apparent intent of the Legislature.’ ...
“ ‘ “ ‘In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature. As we have said:
“ ““ “ ‘Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature- must be given effect.’ ” ””
“(Citations omitted.)”
Ex parte City of Orange Beach Bd. of Adjustment, 833 So.2d 51, 56 (Ala.2001).
Both sides have based their competing interpretations of § 12 not so much on the text of the statute, however, as on what it does not say. The employees contend that because § 12 does not explicitly state that the Personnel Board has the power to allow appointing authorities to suspend merit pay raises, the legislature made the payment of such raises mandatory. Conversely, the Personnel Board contends that because § 12 does not prohibit the Personnel Board from allowing appointing authorities to suspend merit raises, the legislature intended to allow the Personnel Board discretion on this subject.
Both sides cite rules of statutory construction in support of their divergent arguments based on the silence of the statute. The employees rely upon the statutory construction maxim of expressio unius est exclusio alterius, “to express or include one thing implies the exclusion of the other.” Black’s Law Dictionary 661 (9th ed. 2009). See also Jefferson Cnty. v. Alabama Criminal Justice Info. Ctr. Comm’n, 620 So.2d 651, 658 (Ala. 1993) (stating that “the express inclusion of requirements in the law implies an intention to exclude other requirements not so included”). The employees reason that the inclusion in § 12 of the enabling act of the requirement that the Personnel Board create a scheme for salary advancements necessarily implies an intention by the legislature to exclude the power to suspend such salary advancements for any reason. This logic does not follow, however.
The maxim at issue generally applies only when a statute or rule utilizes a listing or group of things. Further, it applies only when the “things” expressed are of the same nature as “others” that have been excluded. In Barnhart v. Peabody Coal Co., 537 U.S. 149, 168, 123 S.Ct. 748, 154 L.Ed.2d 653 (2003), the United States Supreme Court explained:
“As we have held repeatedly, the canon expressio unius est exclusio alterius does not apply to every statutory listing or grouping; it has force only when the items expressed are members of an ‘associated group or series,’ justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence.”
(Emphasis added.) See also Carver v. Lehman, 558 F.3d 869, 876 n. 13 (9th *28 Cir.2009) (to same effect as Barnhart)-, 2A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction § 47:23 (7th ed. 2009) (explaining that the maxim “has force only when the items expressed are members of an associated group or series, justifying the inference that the items not mentioned were excluded by deliberate choice” (emphasis added)).
Here, there is only a general requirement that the Personnel Board adopt a scheme for “the advancement of salary.” The enabling act does not authorize or prescribe specific attributes of the scheme so as to justify an implication that the legislature intended to exclude other attributes not expressly authorized or prescribed. Among other things, it contains no specifics as to the schedule upon which salaries must advance[7] or in what amounts. In short, there is no group or series of things expressed in a way that provides a predicate for the operation of the maxim.
In addition, the maxim is of little help in this case for an even more fundamental reason:
‘“Several Latin maxims masquerade as rules of interpretation while doing nothing more than describing results reached by other means. The best example is probably expressio unius est exclusio alterius, which is a rather elaborate, mysterious sounding, and anachronistic way of describing the negative implication. Far from being a rule, it is not even lexicographically accurate, because it is simply not true, generally, that the mere express conferral of a right or privilege in one kind of situation implies the denial of the equivalent right or privilege in other kinds. Sometimes it does and sometimes it does not, and whether it does or does not depends on the particular circumstances of context. Without contextual support, therefore, there is not even a mild presumption here. Accordingly, this maxim is at best a description, after the fact, of what the court has discovered from context.’ R. Dickerson, The Interpretation and Application of Statutes 234-35 (1975).”
United States v. Castro, 837 F.2d 441, 443 n. 2 (11th Cir.1988).
The Personnel Board cites the more specific rule that “[t]he personnel board’s interpretation of [the enabling act], although not conclusive, is nonetheless entitled to great deference from this Court with respect to the question of legislative intent.” Smith v. City of Pleasant Grove, 672 So.2d 501, 506 (Ala.1995). This rule is not particularly helpful in this instance, however, because “[t]he traditional deference given an administrative agency’s interpretation of a statute appropriately exists ... when the interpretation does not exceed the agency’s statutory authority (i.e., jurisdiction).” Ex parte State Health Planning & Dev. Agency, 855 So.2d 1098, 1102 (Ala.2002). The whole thrust of the employees’ argument is that the Personnel Board does not have the statutory authority to grant appointing authorities the power to suspend merit pay raises.
Settling the dispute over the two arguments on the basis of the silence of the statute requires adherence to “[t]he polestar of statutory construction [which] is to ascertain and give effect to the Legislature’s intent in enacting a statute.” Ex parte Berryhill, 801 So.2d 7, 9-10 (Ala. 2001). Divining the legislature’s intent entails examining § 12 in the context of the *29 enabling act as a whole. As this Court stated in a previous case in which it determined that a rule promulgated by the Mobile County Personnel Board did not violate the enabling act that created that board: “Instead of taking one isolated and narrowly construed sentence of [a section in the statute], we should look to the entire framework of the act, the intents and purposes of the act and the means by which it has been given construction, effect and operation during its years of existence.” Jordan v. City of Mobile, 260 Ala. 398, 401, 71 So.2d 513, 520 (1954). See, e.g., Berryhill, 801 So.2d at 11 (stating that we must “give effect to the legislative intent ... as may be inferred from the language used as well as from the reason for the act” (emphasis omitted)); Ex parte Jackson, 614 So.2d 405, 406 (Ala.1993) (observing that “[b]ecause the meaning of statutory language depends on context, a statute is to be read as a whole”).
“Act No. 248 [the enabling act], enacted in 1945 as a ‘general law of local application,’ provides for the creation and establishment of a county-wide civil service system and a personnel board in counties having a population of 400,000 or more, whose duties include the determination of ‘salary income’ for classified civil service employees.”
County Comm’n of Jefferson Cnty. v. Fraternal Order of Police, Lodge No. 64, 558 So.2d 893, 895 (Ala.1989). This Court has stated that the enabling act vests the Personnel Board “with broad power and authority to establish rules and regulations necessary to govern and control ‘all employees holding positions in the classified service of Jefferson County and all municipalities within that county.” Henderson v. Arrington, 392 So.2d 806, 808 (Ala.1980) (emphasis added). In fact, “within the framework of an enabling act and pursuant to its directions, an administrative agency’s power to adopt administrative rules addressing an area of concern ‘is generally co-extensive with that of the legislature to speak on the question.’ ” Mobile Fire Fighters Ass’n v. Personnel Bd. of Mobile Cnty., 720 So.2d 932, 938 (Ala.Civ.App.1998) (quoting Marcet v. Board of Plumbers Examination & Registration of Alabama, 249 Ala. 48, 50, 29 So.2d 333, 335 (1947)). Thus, we start with the recognition that we must interpret the enabling act with the idea in mind that the legislature sought to give the Personnel Board broad powers for regulating Jefferson County’s civil-service system, “includpng] the determination of ‘salary income’ for classified civil service employees.” County Comm’n of Jefferson Cnty., 558 So.2d at 895.
Given the nature of an enabling act and the broad powers generally conferred to an administrative agency — and to personnel boards in particular — thereunder, it should not be surprising that on two separate occasions our courts have rejected arguments similar to that of the employees, i.e., the contention that the failure of an enabling act to expressly state that a personnel board possessed a certain power meant that it was prohibited from taking a certain action.
“In Jordan [v. City of Mobile, 260 Ala. 393, 400, 71 So.2d 513 (1954) ], our Supreme Court upheld the validity of [Mobile County Personnel] Board Rule 14.7, providing that appeals to the Board from disciplinary decisions made by appointing authorities shall be heard de novo, and that the Board can rescind, modify, alter, or affirm the penalty imposed or impose an additional or different penalty as may be warranted by the evidence adduced at the hearing. Notably, the Jordan court upheld Rule 14.7 despite the absence of any language in § XXII of the Act, which pertains to dismissal, that would expressly allow the *30 Board to do anything other than reinstate a dismissed employee.”
Mobile Fire Fighters Ass’n, 720 So.2d at 938. Specifically, the Jordan Court stated:
“We do not consider that the mere fact that the legislature saw fit to declare by Section 22(a) what the judgment of the board should be when a charge against an employee is proven unwarranted, that this inhibits the board or limits its powers to adopt rules governing cases where the grounds for dismissal are technical or the cause therefor trivial, followed by severe and excessive punishment by the appointing authority, namely, the city or the county.”
260 Ala. at 400, 71 So.2d at 519. Likewise, in Mobile Fire Fighters Ass’n, the Court of Civil Appeals, emulating the reasoning in Jordan, concluded that the fact “[t]hat the Act’s section [Act No. 470 of the 1939 Alabama Legislature, which sets forth the powers and duties of the Personnel Board of Mobile County] labeled ‘Promotion’ does not specifically provide for final selection of a certified candidate by an appointing authority does not limit the Board’s discretion to provide for such a result through its rulemaking power.” Mobile Fire Fighters Ass’n, 720 So.2d at 939.
A perusal of the provisions of the enabling act confirms that the legislature conferred broad discretionary powers upon the Personnel Board. The title of the enabling act provides, in part, that the purpose of the act was “[t]o create and establish in each county in Alabama which has a population of 400,000 or more ... a county-wide Civil Service System ... and to create a Personnel Board and other agencies for the supervision and administration of said System in each of such counties.... ” Section 2 of the enabling act, entitled “Personnel Board: extent of its authority defined,” as amended by Act No. 677, Ala. Acts 1977, provides in part that
“[i]n and for each separate county of the State of Alabama which has a population of four hundred thousand or more people according to the last or any future federal census, there shall be a personnel board for the government and control by rules and regulations and practices hereinafter set out or authorized of all employees and appointees holding positions in the classified service of such counties and the municipalities therein ... and such personnel board is vested with such power, authority and jurisdiction.”
Act No. 677, Ala. Acts 1977, § 2.[8] Thus, the Personnel Board is vested with the authority to govern and control the employees in the civil-service system through rules and regulations it promulgates.
Both versions of § 12 of the enabling act — in Act No. 680 and Act No. 684— provide further confirmation that the legislature entrusted the Personnel Board with broad powers in regard to regulating the civil-service employment system. Section 12, as amended in Act No. 680, is entitled *31 “Pay Plan,” and it provides in pertinent part as follows:
“The Director] of Personnel shall Establish, after consultation or offer of consultation with the governing bodies affected, a salary schedule for all positions which shall contain a minimum rate, a maximum rate and such intermediate rates as are deemed necessary ■ by the Personnel Board[,] which shall become effective within thirty days after submission to the governing body concerned, provided that the governing body of each county and municipality affected hereby may raise or lower such schedule by applying the same percentage increase or decrease, or flat sum of increase or decrease, or any combination thereof, to each position in the entire schedule .... Changes in the salary schedule of one class or a number of classes less than all may also be made by order or resolution of a governing body as follows: A certified copy of such order or resolution shall be filed with the Personnel Board, and unless the said resolution or order be disapproved by said Personnel Board within thirty days after the date of filing of such certified copy the same shall be valid and operative according to its terms.... Provided [sic], by proper rules, regulations, and orders for the advancement of salary within each class or grade on the basis of efficiency and length of service. It shall be unlawful for an Appointing Authority or disbursing officer to pay or cause to be paid a salary to any employee greater than or less than the salary to which such employee is entitled to so receive. Such salary schedules, classes and grades may from time to time be amended, added to, consolidated or abolished by the Board.”
(Emphasis added.)
Section 12, as amended in Act No. 684, is entitled “Duties of personnel director,” and it provides in pertinent part as follows:
“The director of personnel subject to the provisions of this subdivision and approval of the personnel board shall: ... At least once every five years, grade and classify or direct the grading and classification of all positions in the county and in each city in the county and for each appointing authority with respect to salary to the end that each employee shall receive the same compensation as all other employees of the said county or city or appointing authority receive for the same grade and class of service. The question whether or not an employee has been assigned to the proper class and grade shall be a matter subject to the decision of the board. Establish, after consultation with the governing bodies affected, a pay plan and salary schedule for all positions which shall contain a minimum rate, a maximum rate and such intermediate and premium rates as are deemed necessary by the personnel board, which shall become effective within thirty days after submission to the governing body concerned, provided that the governing body of each county and municipality affected hereby may raise or lower such schedule by applying the same percentage increase or decrease to the entire schedule, provided, however, no governing body shall raise such entire schedule within twelve months after the adoption of a new salary schedule, nor within twelve months immediately preceding any primary or general elections in which the members of the said governing body are to be elected, except upon the approval of the personnel board.... Changes in the salary schedule on one class or a number of classes less than all may also be made by order or resolution of a governing body as follows: A certified copy of *32 such order or resolution shall be filed with the personnel board, and unless the said resolution or order be disapproved by said personnel board within thirty days after the date of filing of such certified copy the same shall be valid and operative according to its terms.... Provide, by proper rules, regulations, and orders and special provisions in the pay plan for the advancement of salary within each class or grade on the basis of efficiency and length of service, and for other special conditions and premium rates of pay. It shall be unlawful for an appointing authority or disbursing officer to pay or cause to be paid a salary to any employee greater than or less than the salary to which such employee is entitled to so receive. Such pay plan and salary schedules, classes and grades may from time to time be amended, added to, consolidated or abolished by the board.”
(Emphasis added.)
Under § 12 of the enabling act, the personnel director, with the approval of the personnel board, must create a grade a classification structure for all classified employees, must establish a pay plan and a salary schedule for all such employees, and must provide within the pay plan by proper rules and regulations “for the advancement of salary within each class or grade on the basis of efficiency and length of service.” Section 12 expressly empowers the governing bodies within each county and municipality regulated by the enabling act to raise or lower the entire salary schedule; they also are permitted to change the salary schedule of one or more, but fewer than all, classes within the schedule, provided the personnel board does not disapprove of such a change. Finally, the personnel board is expressly granted the power to amend, add to, consolidate, or abolish the pay plan, salary schedules, classes, and grades.
Given the purpose of the enabling act, the broad parameters of the statutory scheme, and the pertinent portions of § 12 — all outlined above — the erroneous nature of the employees’ argument becomes apparent. In essence, the employees contend that within an act in which the legislature intended to provide the Personnel Board with broad powers to regulate the civil-service system — including its compensation scheme — the requirement that the personnel director, with the Personnel Board’s approval, must provide for some kind of mechanism of salary advancement based on efficiency and length of service implicitly prohibits the Personnel Board from allowing appointing authorities to suspend across-the-board merit pay raises for civil-service employees for a period. In other words, the employees urge an emphasis on the limitation of power in a statute designed to grant broad discretion.
The general purpose of the enabling act and the discretion the employees admit the Personnel Board possesses to make rules concerning salary advances certainly cast doubt upon the employees’ position. Indeed, the requirement for a mechanism for salary advancement is so generic that the employees admit that the Personnel Board has the discretion to determine how it is implemented, i.e., to decide upon the “grading” and “classifications” to be used, to determine the amount to be paid to employees in different “steps” within these classifications and gradings, and to delegate to the appointing authorities the discretion to decide what constitutes “efficient” service by an employee.
More harmful to the employees’ argument, however, is the fact that § 12 of the enabling act grants the Personnel Board the power to amend, add to, consolidate, or abolish the pay plan, salary schedules, classes, and grades at its discretion.
*33 Thus, the employees are contending that the Personnel Board has the power to abolish the entire pay plan but lacks the power to authorize the suspension of merit pay raises that exist within the pay plan. This Court has observed that “the power to repeal is the power to amend. The greater includes the less[er].” Hard v. State ex rel. Baker, 228 Ala. 517, 524, 154 So. 77, 83 (1934). See also Eidge v. City of Bessemer, 164 Ala. 599, 615, 51 So. 246, 251 (1909) (McClellan, J., dissenting) (“The underlying principle is that the Legislature, having the right and power to prohibit the traffic in liquors, has also, and necessarily, the power and right to render the major purpose effective by removing and inhibiting the opportunity for evasion by trick, artifice, or design. The greater includes the lesser.”). The same principle holds in this instance: the power to abolish necessarily includes the power to suspend.
Furthermore, as the Personnel Board notes, the employees’ interpretation would produce absurd results. For example, under the employees’ interpretation, an appointing authority must grant merit raises, but it could negate those raises through a wholesale reduction in the salary schedule. Similarly, it would seem that the Personnel Board’s 10-step pay plan violates the employees’ interpretation because, if merit pay raises must be given solely based on satisfactory service and length of service, then such raises could not be denied to an employee at step 10 — the highest step — of a pay grade. The employees concede, however, that employees such as Thompson, who is at step 10 of his applicable pay grade, are not entitled to a merit pay raise.
For all the foregoing reasons, we conclude that the requirement in § 12 of the enabling act that the pay plan must provide for “the advancement of salary within each class or grade on the basis of efficiency and length of service” does not prohibit the Personnel Board from authorizing across-the-board suspensions of merit raises by appointing authorities.

TV. Conclusion

We conclude that Rule 8.2(c) provides appointing authorities the discretion to suspend merit pay raises. We also find that § 12 of the enabling act does not prohibit the Personnel Board from enacting such a rule. Therefore, the circuit court’s summary judgment in favor of the Personnel Board, Jefferson County, and the sheriff is due to be affirmed.
AFFIRMED.
MALONE, C.J., and WOODALL, PARKER, and MAIN, JJ., concur.

. Jefferson County and the sheriff have forgone the right to file their own briefs in this appeal and instead have chosen to adopt the arguments made by the Personnel Board in its brief. In summarizing those arguments we refer only to the “Personnel Board.”

.] Act No. 248, Ala. Acts 1945, a general law of local application, is not codified in the Alabama Code.

. As discussed below, see note 8 and accompanying text, § 2 of Act No. 248, Ala. Acts 1945, grants the Personnel Board authority with respect to "employees in the classified service of the county.” One opinion of this Court, several decisions of the Court of Civil Appeals, and at least one opinion of the Alabama Attorney General reason that sheriff's deputies, like the sheriffs with whom they serve, are not employees in the service of their respective counties for purposes of the county’s local merit system and the rules and regulations promulgated and implemented by the personnel board of the county. See Hooks v. Hitt, 539 So.2d 157 (Ala.1988); Blount Cnty. Comm'n v. Sherrell, 77 So.3d 1196 (Ala.Civ.App.2010), Mack v. Arnold, 929 So.2d 480, 483-84 (Ala.Civ.App.2005); Whitten v. Lowe, 677 So.2d 778, 780 (Ala.Civ.App.1995); and Op. Att'y Gen. No. 2001-217. In the present case, all parties treat the enabling act and the associated rules and regulations of the Personnel Board as applicable to the employees. For the reasons set out herein, acceptance of the position assumed by the parties leads to the same result as would be reached absent that assumption. For purposes of this case, we accept this assumption and proceed to address the arguments presented.

. Section 1 of Act No. 248, Ala. Acts 1945, defines an "appointing authority” as a
"person, officer, board, council, commission or other body ... whose lawful jurisdiction or powers are confined wholly or primarily within the territorial limits of such county and who or which possesses final power to appoint persons to services, jobs, offices or positions, the compensation of which is paid in whole or in part from the public funds of such county or from the public funds of a municipality in such county subject to this Act.”
The parties agree that the sheriff is the appointing authority in this action.

. We are not presented here with an argument that the discretion given the appointing authority extends to the eligibility of employees for raises on an individual, rather than on an across-the-board, basis.

. This Court has not had an occasion to determine which version of § 12 is controlling, though the Court did state in Willis v. Kincaid, 983 So.2d 1100, 1106 (Ala.2007), that *26 Act No. 684, Ala. Acts 1977, contains "the current version of § 12.”

. The only reference to timing or frequency is found in § 12 of the enabling act as amended by Act No. 684, which provides for the grading and classification of positions by the Personnel Board "at least once every five years."

. Similar to the situation with § 12 of the enabling act outlined above, two different versions of § 2 of the enabling act also exist because the legislature likewise enacted two acts amending that section at the same time. Section 2, as amended by Act No. 782, Ala. Acts 1977, reads almost identically to § 2 as amended by Act No. 677, in regard to the quoted passage, providing:
"In and for each separate county of the State of Alabama which has a population of four hundred thousand or more inhabitants according to the last or any future federal census, there shall be a personnel board for the government and control, by rules and regulations and practices hereinafter set out or authorize [sic], of all employees and appointees holding positions in the classified service of such counties, ... and such personnel board is vested with such powers, authority and jurisdiction.”
Act No. 782, Ala. Acts 1977, § 2.